GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:     (415) 393-4622
Facsimile:     (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone:     (213) 229-7311
Facsimile:     (213) 229-6311

*Attorneys for Defendant Meta Platforms, Inc.*

*Additional Attorneys in Signature Block*

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
MICHAEL W. SOBOL, SBN 194857
msobol@lchb.com
DAVID T. RUDOLPH, SBN 233457
drudolph@lchb.com
MELISSA GARDNER, SBN 289096
mgardner@lchb.com
JACOB H. POLIN, SBN 311203
jpolin@lchb.com
NABILA ABDALLAH, SBN 347764
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

CARNEY BATES & PULLIAM, PLLC
JOSEPH HENRY BATES, III, SBN 167688
hbates@cbplaw.com
ALLEN CARNEY (admitted *pro hac vice*)
acarney@cbplaw.com
COURTNEY E. ROSS (admitted *pro hac vice*)
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKHAIL GERSHZON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No. 3:23-cv-00083-SI<br><br>**JOINT RULE 26(f) REPORT AND INITIAL CASE MANAGEMENT STATEMENT**<br><br>Date:     April 7, 2023<br>Time:     2:30 p.m.<br>Location: Zoom<br>Judge:    Honorable Judge Susan Illston |

Plaintiff Mikhail Gershzon ("Plaintiff") and Defendant Meta Platforms, Inc. ("Meta") (collectively, the "Parties"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement pursuant to Federal Rule of Civil Procedure 26, Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, in advance of the Case Management Conference scheduled in the above-captioned case for April 7, 2023 at 2:30 P.M. before the Honorable Susan Illston.

## 1. JURISDICTION AND SERVICE

The Parties agree that no issues exist regarding personal jurisdiction or venue. Meta has formally waived service of process of the summons and complaint. *See* Dkt. 11 (waiver of service). There are no other defendants in this action.

Plaintiff alleges that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S. Code §§ 2721–2725, and pursuant to § 28 U.S.C. 1332(d) as this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000 and at least one member of the Class is a citizen of a state different from the Defendant.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's state law claim, which arises under the California Invasion of Privacy Act, Cal. Penal Code §§ 630–638.

Meta reserves its objections to subject-matter jurisdiction.

## 2. FACTS

*Plaintiff's Statement:*

**Statement of Facts.** This is a privacy class action against Meta for knowingly obtaining statutorily protected personal information that identifies individuals, including names, disability information, and e-mail addresses, as well as confidential communications, from the California Department of Motor Vehicles in violation of the Driver's Privacy Protection Act, 18 U.S. Code §§ 2721-2725 ("DPPA") and the California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA"). See Dkt. 1, Class Action Complaint ("Complaint"). Plaintiff is a California resident who holds a registered online account with the California DMV and has used the DMV's website approximately twice per year since 2019 to manage his business with the agency, including his application for a

disabled parking placard in 2020.  Plaintiff alleges that Meta designed and indiscriminately deployed hidden software code known as the "Meta Pixel" on the DMV website, acquiring vast quantities of information about Plaintiff and Class members from the DMV when they interacted with the site, including information specifically protected by state and federal law.

The DMV website states that no such transmissions occur; *i.e.* that users' information will be used "solely for the purposes for which it was provided."  Nonetheless, the Meta Pixel embedded on the DMV's website operates to collect users' personal information.  As detailed in the Complaint, the Meta Pixel acts like a dragnet that indiscriminately pulls in any available personal information including information specially protected by Congress and the California legislature, including the first name of any user who clicks into their password protected "MyDMV" account (which is necessary for most DMV interactions); the email address of users who click a "status checker" link to check the status of a pending DMV disability placard application and other contextual "disability information" about the application itself; and the substance of communications between users and the DMV including searches users perform and research they conduct, all of which is identifying, in itself, and by virtue of the personal identifiers Meta ties to the data through the Pixel.  Meta uses the data it obtains for purposes authorized by neither Class members nor the DMV, including in furtherance of its advertising business.

The Meta Pixel's transmissions regarding the DMV and its users are delivered according to the Pixel's design and default operations, regardless of the purposes the DMV may have had for installing a Pixel on its website. Since introducing the Pixel code in 2015, Meta has "quietly" modified the Pixel's defaults and designs over time, so that today and since at least 2018, it operates contrary to law and all reasonable expectations, especially on the DMV website.

**Response to Meta's Statement.** Plaintiff herein responds to Meta's Statement of Facts within the context of his claims because the infirmity of Meta's anticipated affirmative defenses is relevant to the Court's determination of the issues raised in section 8 (discovery).  Meta generally tries to reframe this case away from its central issues and Plaintiff's well-pled factual allegations. One fundamental flaw in Meta's preview of its arguments for dismissal, besides dissonance with the facts alleged, is the arguments would not support a defense to the collection of private information from DMV records.

Such information is protected by a unique and specific statute that Meta ignores. Plaintiff's claim under the DPPA only requires (1) knowingly (2) obtaining (or disclosing or using) (3) personal information (4) from a motor vehicle record (5) for a purpose not permitted under [18 U.S. Code § 2721]. The statute enumerates exceptions, but none would excuse a purportedly "passive recipient" who knowingly and proactively created a system to obtain the information as alleged. The self-executing nature of the software that Meta deployed and then "quietly" —exemplified by the DMV's declared commitment to protecting this data—expanded (in 2017 and 2018) to circumvent technical defenses and collect the vast swaths of data at issue here is also inconsistent with Meta's characterization of the Pixel as like a common "tool" provided by other companies.

Similarly, Meta's characterizations of its efforts to "block collection" of information are contradicted by Plaintiff's supported allegations and have little to do with the issues here. Plaintiff's allegations concern data the Pixel obtains by *default* and intended design. Protected data goes to Meta, as Plaintiff's Complaint demonstrates by depicting the transmissions. Any backend analysis Meta may conduct *after* unlawfully intercepting communications and obtaining protected information, such as to exclude it from use in advertising, would not affect its liability under the statutes at issue here, but even if it could, Meta does not point to a "filter" that is even intended to target this data.

Plaintiff disputes Meta's characterization of its Business Tools terms of service and will address the substance of any such document if Meta makes a properly supported request for judicial notice. Even as described by Meta, however, those terms cannot show authorization for Meta's alleged conduct. CIPA requires that "all" parties consent, and the DPPA imposes liability on one who obtains information for improper purposes, even if the DMV had willingly provided it. Cal. Penal Code § 631(a); 18 U.S.C. §§ 2721(a), 2724(a). Meta's discussion of user terms of service and "controls" are similarly flawed. Plaintiff will address these arguments if they are properly raised by motion under Federal Rule 12, but for purposes of this statement, notes that (1) neither Plaintiff, nor apparently the DMV, was aware of Meta's alleged conduct; and (2) the DPPA requires "express consent," which must be "in writing" (18 U.S.C. § 2725(5)), and cannot be inferred from the circumstances or from Meta's terms of service. *See* 18 U.S.C. § 2721(b)(11), (13), and (d); *Maracich v. Spears*, 570 U.S. 48, 58 (2013); *Reno v. Condon*, 528 U.S. 141, 144–45 (2000).

1

***Meta's Statement:***

2          This case challenges Meta's alleged receipt and use of information about Plaintiff from a third-

3  party website operated by the California Department of Motor Vehicles ("DMV").   Specifically,

4  Plaintiff alleges that because the California DMV embedded the Meta Pixel on its website, Meta

5  received information related to California drivers' first names, email addresses, and browsing activity

6  on the California DMV website.  Compl. ¶¶ 35; 63.

7          The Meta Pixel—which is a tool similar to those used across the web and offered by companies

8  other than Meta—is a free, publicly available piece of code that third-party website developers can

9  choose to install and use on their websites to measure certain actions taken on their own websites.

10  Plaintiff's allegations about the Meta Pixel's operation, what data it collects, and how that data is used

11  are highly inaccurate.  Meta is a passive recipient of information third party websites choose to send,

12  not an active, knowing participant in improperly obtaining information.  Meta does not want to receive

13  sensitive information through the Pixel and it takes numerous measures to block the transmission of

14  such data.

15          First, Meta requires developers who choose to use the Meta Pixel tool to warrant that they have

16  the legal right to share any information they choose to share with Meta, and it expressly prohibits

17  developers from sending it sensitive information, including any information protected from

18  transmission by applicable law.  These provisions are set forth in clear and direct terms.  For example,

19  before integrating the Meta Pixel code, website developers must agree to the Facebook Business Tools

20  Terms, which require developers to, among other things:  (1) warrant that they have "all of the

21  necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations

22  and industry guidelines)" to disclose the information they are sending to Meta; (2) refrain from sending

23  Meta any "sensitive information," specifically including information "defined as sensitive under

24  applicable laws"; (3) provide to their users "robust and sufficiently prominent notice regarding the . . .

25  collection, sharing and usage" of data via Meta's Business Tools; and (4) explain how and where users

26  can opt out of the collection and sharing of their information via Meta's Business Tools for ad targeting

27  purposes.  Additionally, during the Meta Pixel installation process, Meta reminds developers not to

28  send Meta sensitive user data, linking to the Business Tools Terms and to Meta's Business Help Center

content about sensitive data.  Meta has also developed systems to filter out certain potentially sensitive data that website developers send it through the Meta Pixel.

Second, Plaintiff is a Facebook user (Complaint ¶ 61) who consented to Meta's use of the Pixel tool in agreeing to Meta's Terms of Service.  Meta takes numerous steps to ensure that its users are informed of and agree to the information that can be shared with Meta.  Meta's Privacy Policy,[1] which all users must consent to in order to sign up for and continue to use Meta's services, discloses that advertisers and third-party website developers may use Meta's Business Tools, including the Meta Pixel, to send Meta "a variety of your information and activities on and off our Products . . . whether or not you're logged in or have an account on [Meta's] Products."  It discloses that third parties may send to Meta, for example, "device information," "[w]ebsites you visit," "[p]urchases and transactions you make," and "the ads you see and how you interact with them."  Meta users also agree, via the Meta Terms of Service, that their personal data can be used to provide targeted ads:  "you agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products.  We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you."

Third, Meta provides clear, comprehensive resources for its users to understand Meta's advertising practices, the data on which ads can be based, and the ability for users to adjust their ads preferences.  Plaintiff, like all Facebook users, has *control* over the use of his off-Facebook activity (such as activity on third-party websites) for advertising purposes.  Meta enables its users to review a summary of information Meta has received about their activity from third parties, including through the Pixel, and to disconnect that data from their account.  Meta users can control or disconnect the off-Facebook activity that has been associated with their Facebook account using the Off-Facebook Activity tool, subject to some exceptions for security and safety needs.  In addition, Meta provides extensive additional privacy tools and resources to users of the Meta services that allow them to control how data shared by third parties can be used to show them relevant ads.  Specifically, the "Data About

---

[1] Meta uses "Privacy Policy" to refer to all versions of the policy operative during the time period relevant to this action, all of which contain similar disclosures regarding the data third parties may share with Meta.

Your Activity From Partners" tool within Meta's "Ad Settings" allows users to opt out of receiving personalized advertisements based on their activity on third-party websites, apps, or offline, among other things.

In sum, third-party developers decide what information, if any, to share with Meta via the Pixel tool. Meta contractually prohibits those developers from sending it sensitive and/or legally protected data. Meta cannot exercise complete control over how third parties use the Pixel, but it takes multiple steps to educate and prevent those third parties from using the Pixel tool in a way that could share sensitive information. Meta has implemented a filter to further help prevent against it receiving even potentially sensitive information it detects. Meta users can control whether their activity on third-party websites is used by Meta for advertising purposes, and Meta discloses and obtains consent from all of its users for its data and advertising practices, including the use of the Pixel tool.

**Response to Plaintiff's Statement.** Plaintiff's representation that "Meta designed and indiscriminately deployed hidden software code known as the 'Meta Pixel' on the DMV website" is false. Each developer, including the California DMV, decides whether and how to use the Meta Pixel. Contrary to Plaintiff's claim, developers—not Meta—must decide whether to install the Pixel and where to place it if they do install it, and developers control what actions to measure. Plaintiff seems to recognize this fact elsewhere in his statement, where he acknowledges he does not know "the purposes the DMV may have had for installing a Pixel on its website."

Meta is conscious of the Standing Order in this District regarding the contents of Joint Case Management Statements, which directs parties to avoid "extended legal argument." As such, Meta will not address here Plaintiff's meritless arguments regarding when the DPPA and CIPA impose liability on a defendant. These issues as well as Meta's responses to Plaintiff's other claims are fully briefed in Meta's motion to dismiss, which will be submitted today, March 31, 2023.

### 3. LEGAL ISSUES

*Plaintiff's Statement:*

Below, Meta indicates that it intends to raise arguments about the adequacy of Plaintiff's factual allegations, a defense that Plaintiff provided "consent" to Meta's alleged conduct, and questions about the timeliness of Plaintiff's claims. Plaintiff will address these arguments in his forthcoming opposition

-6-

to Meta's motion, but, as discussed above in section 2, Plaintiff supports his factual allegations with citations to publicly available sources and forensic documentation of Meta's unlawful transmissions from the DMV, and Meta has yet to identify an adequate factual basis for its defenses. As to the affirmative defense of timeliness, as alleged, Meta's deceptive concealment of the Pixel's true conduct tolls the applicable statutes of limitation and estops Meta from relying on them. Moreover, Plaintiff's complaint was filed well within the four-year statute for the DPPA (*see* 28 U.S.C. § 1658(a); Dkt. 1 ¶¶ 61-62), and any dispute regarding when Plaintiff reasonably should have discovered facts for purposes of consent or the accrual of his causes of action are fact-bound determinations not appropriate for resolution on a motion to dismiss. Plaintiff addresses Meta's statement regarding class certification *infra*, section 9.

### Meta's Statement:

Meta denies that it has violated any laws or "deceptively conceal[ed]" any wrongful conduct, denies that Plaintiff has stated a claim under any legal theory, and denies that Plaintiff may pursue claims on behalf of any putative class.  The primary legal issues at this stage, which are fully briefed in Meta's motion to dismiss that will be filed today, include:

(1) Whether Plaintiff has alleged sufficient facts to plead a violation of the DPPA and/or California Invasion of Privacy Act;

(2) Whether Plaintiff consented to the conduct alleged in the Complaint.

(3) Whether Plaintiff's claims are barred by the applicable statutes of limitations.

Additional legal issues may be presented, particularly if the case progresses past the pleading stage.

### 4.  MOTIONS

### Prior Motions:

There have been no prior motions filed in this action aside from the motions for leave to appear *pro hac vice* filed by counsel for the Parties.

*Pending Motions:*

Meta will be filing a motion to dismiss the Complaint today, March 31, 2023.  The Parties jointly propose the following briefing schedule for this motion:

| Event | Proposed Date |
|---|---|
| Meta's motion to dismiss the Complaint and any Request for Judicial Notice | March 31, 2023 |
| Opposition to motion to dismiss | April 28, 2023 |
| Reply in support of motion to dismiss | May 19, 2023 |
| Motion hearing | June 2, 2023 at 10:00 a.m., or as soon thereafter as convenient for the Court |

*Anticipated Motions:*

At the earliest practicable time after conducting adequate discovery, Plaintiff will move to have the claims certified for class treatment under Fed. R. Civ. P. 23.  Meta will oppose class certification.

The Parties may move for summary judgment and make various discovery and pretrial motions, as necessary.

As more fully discussed below in section 8 (Discovery), Meta proposes that the Court stay discovery until it issues a decision on Meta's motion to dismiss.  If the Court prefers Meta instead seek this relief by motion, Meta will file a motion to stay discovery until after its motion to dismiss is decided.  Meta believes that any additional motion practice will be contingent on the Court's ruling on the motion to dismiss.  Plaintiff opposes Meta's proposed stay of discovery and would oppose any motion by Meta to stay discovery, as discussed below in section 8.

**5.  AMENDMENT OF PLEADINGS**

Plaintiff does not presently intend to amend his Complaint to add additional parties as Defendants.  Plaintiff reserves his right to amend the Complaint consistent with Fed. R. Civ. P. 15, including to the extent any order from the Court requires or permits further amendment.  Further, in the event that additional cases meeting the requirements of Civil Local Rule 3-12 for Related Cases are brought before this Court, Plaintiff's position is that the efficiencies to be gained through consolidating related actions would be just cause for further amendment.

Meta reserves all rights regarding any future motion by Plaintiff to amend his complaint, and Meta's position is that any potential consolidation and attendant further amendment of the Complaint would be dependent on the specific circumstances presented.

## 6. EVIDENCE PRESERVATION

*Plaintiff's Statement:*

Plaintiff has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and is complying with his obligations to take reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action. On February 24, 2023, Plaintiff provided Meta with information concerning his Facebook accounts to assist Meta in preserving potentially relevant information regarding Plaintiff and Class members in its possession.

Meta has taken the position that it is premature to discuss Meta's preservation efforts, despite Rule 26(f)'s requirement that the Parties "discuss any issues about preserving discoverable information." Other than to state that it is complying with its obligations, Meta declined to respond to questions about whether any automatic destruction of data at issue in the Complaint has been suspended; whether Meta considers data transmitted from the DMV website to fall within its preservation obligations; for what date range is Meta preserving ESI; and how Meta would describe the location or systems where ESI is stored and being preserved. *See* Checklist for Rule 26(f) Meet and Confer, https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf.

Meta's lack of transparency is a significant concern for Plaintiff, as any failure by Meta to preserve information relevant to this case that falls beyond its undisclosed preservation efforts, whether as to scope or time period, will be unavailable in this litigation. To the extent Meta takes the position that any preservation steps would be disproportionate, it must provide specifics to allow Plaintiff and this Court the opportunity to evaluate its position before potentially relevant data is lost.

*Meta's Statement:*

Meta has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and the Parties have begun the meet and confer process pursuant to Fed. R. Civ. P. 26(f). Meta is aware of and is taking reasonable and proportionate steps to comply with its evidence preservation obligations under the Federal Rules of Civil Procedure, including the rules governing

-9-

electronic discovery.  Meta's position is that it is premature to have a detailed discussion about discovery until the issues raised in its motion to dismiss are resolved, and proposes that the Court stay discovery until after the Court rules on its motion to dismiss.

### 7.  DISCLOSURES

The Parties served initial disclosures on March 30, 2023.

### 8.  DISCOVERY

No discovery has been conducted to date.

***Timing/Scope of Anticipated Discovery:***

***Plaintiff's Statement:***

**Overview.** The Parties will unfortunately be required to raise several disputes regarding discovery with the Court.  At the root of these disputes is Meta's position that its anticipated motion to dismiss warrants an immediate stay of discovery.  Taking that position, Meta viewed a number of topics for discussion during the Parties' Rule 26(f) conference as premature, with the result that additional disputes regarding (1) Meta's obligation to disclose the scope of its document preservation efforts (*see supra* section 6); and (2) Meta's obligation to negotiate a proposed Protective Order and ESI Protocol (*see infra*) must be raised with the Court.  The Parties also disagree about Meta's position that discovery should be "bifurcated" to prevent discovery on the "merits," until after a ruling on class certification.

**Background.** On February 24, 2023, Plaintiff sent Meta: (1) a letter outlining Plaintiff's initial positions on the topics the Parties are required to address under Rule 26(f), (2) a letter regarding Meta's document preservation obligations, (3) a draft of a proposed Protective Order; and (4) a request that Meta be prepared to discuss the logistics of preserving and producing ESI as provided for by this District's ESI Guidelines with the goal of promptly finalizing a proposed ESI Protocol. Plaintiff received no response from Meta on the letters or proposed drafts prior to the Rule 26(f) conference. At the conference, Meta stated that it believes its forthcoming motion to dismiss is meritorious, such that staying discovery and deferring discussion of these materials would conserve resources for the Parties and the Court.

**Timing of Discovery.** Plaintiff respectfully submits that Meta fails to make, and could not make in a motion, the "strong showing" required for its requested blanket stay of discovery, which is contrary

-10-

to the Federal Rules and usual practice in this District for cases such as this. Granting Meta's request would prejudice Plaintiff and is already needlessly delaying progress in these proceedings.

"A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied.'" *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). (citation omitted); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (*quoting Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)) (stay warranted only when no factual issues are raised by the motion to dismiss, discovery is not required to address issues raised by the motion to dismiss, and the court is "convinced that the plaintiff will be unable to state a claim for relief"). Courts commonly use a two-prong test:

> A moving party meets the good cause requirement of Federal Rule of Civil Procedure 26(c) when the Court finds (1) the pending motion is potentially dispositive of the entire case, and (2) it can be decided absent additional discovery…. The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements.

*Al Otro Lado. v. Nielsen*, No. 17-2366, 2018 WL 679483, at *2 (S.D. Cal. Jan. 31, 2018); *see also, e.g.*, *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 220 F.R.D. 349, 351 (N.D. Cal. 2003) (denying motion to stay). Even if some claims may be dismissed, the possibility of amendment, which courts grant liberally, can render a motion non-dispositive. *See e.g.*, *Singh v. Google, Inc.*, No. 16-03734, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016) (denying motion because "the Court would consider whether leave to amend should be granted, rendering Google's motion not dispositive."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Res. Dev.*, No. 10-01324, 2010 WL 3746290, at * 1 (N.D. Cal. Sept. 18, 2010) (same).

In applying the two-factor test, courts take only a "preliminary peek" at the merits of the pending motion to dismiss. *In re Nexus 6P Prod. Liab. Litig.*, No. 17-02185, 2018 WL 3036734, at *1-2 (N.D. Cal. June 19, 2018) (citation omitted). Here, Meta's preview of its arguments confirms that its motion is non-dispositive because Meta largely ignores the elements of Plaintiff's claims and, to the extent it does not, raises defenses intertwined with factual disputes that warrant the development of a full record. *See supra* section 2-3. Even if the Court were to dismiss any claim, Plaintiff would and could seek leave to amend at this early stage. *San Francisco Tech. v. Kraco Enters.*, No. 11-00355,

-11-

2011 WL 2193397, at *2 (N.D. Cal. June 6, 2011) (to justify a stay "the pending motion [to dismiss] must be potentially dispositive of the **entire case**"); *Garcia v. Enter. Holdings*, No. 14-0596, 2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014) (denying motion because "Defendants have not convinced the Court that their motion [to dismiss] is meritorious or that it will otherwise be granted without leave to amend, which courts grant liberally."). Notably, Meta relies on authority without even roughly comparable facts and procedural posture. *See e.g.*, *In re Nexus 6P*, 2018 WL 3036734, at *1-2 (considering express warranty disclaimer on express warranty claim); *California Crane Sch., Inc. v. Google LLC*, No. 21-10001, 2022 WL 1271010, at *1 (N.D. Cal. Apr. 28, 2022) (motions to, *inter alia*, compel arbitration); *In re Nexus 6p Products Liability Litig.*, No. 17-02185, 2017 WL 3581188, at *1–2 (N.D. Cal. Aug. 18, 2017) (personal jurisdiction); *Cellwitch, Inc. v. Tile, Inc.*, No. 19-01315, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (validity of patent); *Yamasaki v. Zicam LLC*, No. 21-cv-02596, 2021 WL 3675214, at *2 (N.D. Cal. Aug. 19, 2021) (authorization to assert claim).

Meta also fails to "show a particular and specific need" for an early stay. *Al Otro Lado*, 2018 WL 679483, at *2. Indeed, the balance decisively favors following the Federal Rules because a stay would prejudice Plaintiff. Over time memories fade and evidence is lost. Meta has not even informed Plaintiff what evidence it is preserving, and discovery will also be sought from third parties. Meta may argue that discovery will be expensive and time-consuming, but participating in discovery is not prejudice. *See, e.g., Huene v. U.S. Dep't of Treasury, I.R.S.*, No. 11-2110, 2013 WL 417747, at *8 (E.D. Cal. Jan. 31, 2013) ("That discovery may involve inconvenience and expense is not sufficient to support a stay of discovery. Rather, a stay of discovery should only be ordered if the court is convinced that a plaintiff will be unable to state a claim for relief."). If Meta believes the discovery Plaintiff requests in this case is improper, Meta can make specific objections to specific discovery in the context of a meet and confer and in accordance with Judge DeMarchi's standing order on discovery disputes. Finally, delaying discovery until well into 2023 would be particularly prejudicial given the continuing harm and important injunctive relief that Plaintiff seeks. Accordingly, Meta's request to stay discovery should be denied.

**Scope of Anticipated Discovery.** Meta's request to bifurcate discovery should also be denied. Plaintiff will propound discovery to adequately prepare for class certification and trial. To that end, he

must be permitted to develop a complete record before class certification. *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (class certification determination requires a "rigorous analysis" that necessarily "will entail some overlap with the merits of the plaintiff's underlying claim" to assess whether Rule 23 satisfied). Although certification is not an actual "mini-trial" with the "formal strictures of trial," "[a] plaintiff seeking class certification bears the burden of affirmatively demonstrating "through evidentiary proof that the class meets the prerequisites of Rule 23(a)." *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1003-04 (9th Cir. 2018) (internal citations omitted).

The discovery must be commensurate with Plaintiff's burden, and it simply "ignores the realities" of "class action litigation today" to limit discovery pre-certification. *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 152057, 2018 WL 501413, at *3–4 (C.D. Cal. Jan. 5, 2018); H. Newberg and A. Conte, *Newberg on Class Actions*, § 7.8 (4th Ed. 2002) ("Discovery on the merits should not normally be stayed pending so-called class discovery, because class discovery is frequently not distinguishable from merits discovery, and classwide discovery is often necessary as circumstantial evidence even when the class is denied. Such a discovery bifurcation will often be counterproductive in delaying the progress of the suit for orderly and efficient adjudication."). In a class action case such as this one, all or virtually all discovery must be open from the beginning. *See Garcia v. Enter. Holdings, Inc.*, No. 14-00596, 2014 WL 4623007, at *2 (N.D. Cal. Sept. 15, 2014); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 299-300 (S.D.N.Y. 2012) (collecting cases "illustrat[ing] the need to develop the record fully before a class motion is considered").

Meta does not even attempt to explain how bifurcation would promote judicial economy in this case, and it is far more likely, as Courts in this District have observed, that "fights between the parties about whether discovery constitutes class or merits discovery are likely to consume more time than would potentially be saved by deferring merits discovery until a later date." *Imran v. Vital Pharm., Inc.*, No. 18-05758, 2019 WL 13207582, at *1 (N.D. Cal. Sept. 4, 2019).  In accordance with his well-established burden, Plaintiff anticipates that discovery will be required on a number of topics relevant to the Parties' claims or defenses and proportional to the needs of the case, including the following:

    1.  The functioning and operation of Meta's systems, platforms, and products described in the Complaint.

2. The nature, type, and extent of protected information Meta obtains on Plaintiff and Class members and the frequency with which Meta obtains it.

3. Meta's knowledge and awareness regarding the information it obtains from the DMV.

4. The nature of any agreement or understanding between Meta and the DMV relating to the Meta Pixel.

5. Meta's policies, security guidelines, operating procedures, and practices concerning the sharing and re-disclosure of data transmitted via the Meta Pixel.

6. Meta's use and/or monetization of protected information described in the Complaint.

7. The functioning and operation of Meta's systems, platforms, and products involved in Meta's acquisition, use and/or monetization of protected information described in the Complaint.

8. Source code and documentation related to Meta's systems, platforms, and products described in the Complaint.

Plaintiff may seek leave of the Court to propound more interrogatories or take more depositions than provided for by the Federal Rules at a later stage of this litigation.

***Meta's Statement:***

Meta's position is that the Court should stay discovery until after the Court rules on Meta's motion to dismiss, which will be submitted today, March 31, 2023, because this motion is potentially dispositive of the Complaint in its entirety and is otherwise likely to substantially narrow the issues in the case.   If the Court prefers Meta instead seek this relief by motion, Meta will file a motion to stay discovery.

Under these circumstances, a stay of discovery will promote judicial economy and avoid waste of the Parties' resources.   Courts in this District have recognized that a stay of expensive and burdensome discovery is appropriate while a court considers the merits of substantial motions to dismiss.  For example, in *In re Nexus 6p Products Liability Litig.*, on which Plaintiff also relies, this Court granted Google's motion to stay discovery pending its motion to dismiss where, as here, Plaintiffs' claims were undermined by the publicly-available terms and conditions applicable to the products at issue.  *In re Nexus 6p Products Liability Litig.*, No. 17-cv-02185, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017).  Meta's motion to dismiss similarly argues, *inter alia*, that both of Plaintiff's

-14-

claims regarding the Meta Pixel are defeated by judicially noticeable terms in Meta's Business Tools, Commercial Terms, and Privacy Policy, as well as the California DMV's Conditions of Use.  These "strong arguments for dismissal" warrant a stay.  *Id.*

Further, "the fact that Plaintiff could possibly remedy any deficient allegations with leave to amend is not germane to the question before the Court on a motion to stay discovery: whether Defendants' motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed."  *Heck v. Amazon.com, Inc.*, No. 22-cv-03986, 2022 WL 16579372, at *2 (N.D. Cal. Nov. 1, 2022) (finding pending motion to dismiss was potentially dispositive and granting stay of discovery, rejecting argument that "the allegations, if dismissed, could be cured through amendment"); *see also In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (granting stay of discovery pending motion to dismiss because discovery is likely improper "if . . . the complaint proves to be so weak that any discovery at all would be a mere fishing expedition).  And here, Meta's arguments "could prove difficult . . . to overcome, even with leave to amend freely given."  *Nexus*, 2017 WL 3581188, at *2 (granting stay).

Other aspects of this action also counsel in favor of a stay.  First, motions to stay are particularly appropriate where the claims are "brought by a putative class."  *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-03556, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020).  Second, "[a]lthough Plaintiff[] argue[s] that Defendant[']s motion presents factual disputes that will require discovery, [he] do[es] not suggest the Court cannot resolve the motion to dismiss without the benefit of discovery."  *Jacksonville Police Officers & Fire Fighters Health Ins. Trust v. Gilead Scis., Inc.*, No. 20-cv-06522, 2022 WL 17418970, at *2 (N.D. Cal. Dec. 5, 2022).

Stays are frequently granted under these circumstances.  *See*, *e.g.*, *Cellwitch, Inc. v. Tile, Inc.*, No. 19-cv-01315, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (granting stay of discovery pending a decision on upcoming motion to dismiss in "the interest of judicial efficiency and conserving the Court's resources"); *Yamasaki v. Zicam LLC*, No. 21-cv-02596, 2021 WL 3675214, at *2 (N.D. Cal. Aug. 19, 2021) ("the Court finds in its discretion that both party and judicial resources will be most efficiently used if discovery is stayed until the Court decides the pending motion to dismiss"); *California Crane Sch., Inc. v. Google LLC*, No. 21-cv-10001, 2022 WL 1271010, at *1 (N.D. Cal. Apr.

-15-

28, 2022) ("forcing Defendants to spend time and resources on the kind of discovery that Plaintiff seeks . . . before the Court has an opportunity to assess whether Plaintiff has pled any plausible claims against them may subject Defendants to undue burden and expense."); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-cv-00363, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020) (granting stay where "Facebook's arguments that Plaintiffs' claims are time-barred, Plaintiff fails to adequately allege . . . injury, and Plaintiff fails to state a claim for relief are potentially dispositive of the entire case.").

Meta is willing to meet and confer with Plaintiff to discuss the timing and potential sequencing of discovery after the motion to dismiss has been decided.

Once discovery proceeds (assuming any claims survive Meta's motion to dismiss), Meta believes that it is appropriate to bifurcate discovery so that the issue of class certification is addressed first; following a ruling on Plaintiff's class certification motion, discovery would then proceed on merits-related issues.  Meta believes it is premature to discuss the merits of its anticipated request to bifurcate discovery until after the Court rules on its motion to dismiss, which may significantly impact the issues, if any, that remain subject to discovery.  Once the Court has ruled on that motion, and assuming any portion of Plaintiff's claims survive, the parties can then discuss whether bifurcation is the most efficient manner in which to proceed.

Assuming the case proceeds to discovery, Meta anticipates requesting discovery from Plaintiff on his claims, including but not limited to the following:  (i) any materials related to Plaintiff's use of Meta products; (ii) any materials related to Plaintiff's use of the California DMV web portal; and (iii) any materials related to Plaintiff's alleged damages.  Meta also reserves the right to seek third-party discovery.

### Protective Order:

The Parties anticipate stipulating to a protective order governing the handling of confidential materials, however the parties disagree about the appropriate timing for this discussion.

 Plaintiff's position is that Meta should be ordered to promptly negotiate the proposed Protective Order that Plaintiff sent to Meta on February 24.  In the interest of preventing further needless delay, Plaintiff also proposes that the Court enter a deadline for submitting a proposed stipulated order or raising any remaining disputes with the discovery magistrate. *See infra* section 16.

-16-

Meta's position is that the Court should stay discovery until after the Court rules on Meta's motion to dismiss.  Meta proposes that the Parties negotiate a protective order promptly after the Court rules on Meta's motion to dismiss.  If the Court directs the Parties to begin negotiating a protective order before resolution of Meta's motion to dismiss, it is not necessary for the Court to enter a deadline by which the Parties must submit a proposed order or raise any disputes with the Court.  The Parties should first endeavor to resolve any disagreement before burdening the Court with potential disputes.

***Electronic Discovery:***

The Parties anticipate stipulating to a protocol governing ESI discovery in this matter, but disagree about the timing.

Plaintiff's position is that Meta should be ordered to promptly negotiate the proposed ESI Protocol that Plaintiff sent to Meta on February 24, and to meaningfully meet and confer about electronically stored information as provided for by this District's checklist.  Plaintiff also proposes that the Court enter a deadline for submitting a proposed stipulated order or raising any remaining disputes with the discovery magistrate.  *See infra* section 16.

Meta's position is that the Court should stay discovery until after the Court rules on Meta's motion to dismiss.  Meta proposes that the Parties negotiate an ESI protocol promptly after the Court rules on Meta's motion to dismiss.  If the Court directs the Parties to begin negotiating an ESI Protocol before resolution of Meta's motion to dismiss, it is not necessary for the Court to enter a deadline by which the Parties must submit a proposed order or raise any disputes with the Court.  The Parties should first endeavor to resolve any disagreement before burdening the Court with potential disputes.

***Limitations or Modifications:***

The Parties consent and agree, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), that service may be made by electronic mail, with copies sent to all attorneys of record for the party served.

Plaintiff anticipates that he may need to seek relief from the standard limits on the number of deponents and/or interrogatories.  However, the extent of that anticipated relief is not known at this time, and therefore Plaintiff reserves his rights to seek relief at an appropriate time in the future.  Plaintiff does not believe that it would be efficient or productive to limit or focus discovery on particular issues at this time.

Meta's position is that it currently does not anticipate that any changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules, and currently does not request that other limitations be imposed, but reserves the right to seek Plaintiff's consent and, as necessary, to seek leave for such modifications.  Meta notes that Plaintiff has not—and cannot at this stage—make the required "'particularized showing' of the need for additional depositions" or interrogatories nor that he has "exhaust[ed] less expensive and burdensome means of discovery."  *X One, Inc. v. Uber Techs., Inc.*, 2019 WL 2207645, at *2 (N.D. Cal. May 22, 2019).

### 9.  CLASS ACTIONS

*Plaintiff's Statement:*

The proposed Class is "All persons who accessed their MyDMV account on the California DMV website or viewed the status of a pending application to the California DMV by clicking on the 'status checker' link in electronic correspondence from the California DMV."  Plaintiff intends to seek class certification under Federal Rule 23(b)(2), 23(b)(3) and if appropriate, 23(c)(4) at the appropriate time, after Meta has produced sufficient discovery to "prove" that the requirements of Rule 23 are satisfied including that there are "common answers" to the numerous common questions in this case. *See supra*, section 8. As set forth in the Complaint, numerous questions of law and fact are common to the Class, including:

a. Whether Meta knowingly obtained Plaintiff's and Class members' personal information from the DMV website;

b. Whether Meta's conduct violates the DPPA;

c. Whether Meta obtained express consent from Plaintiff and Class members as required for the alleged conduct under the DPPA;

d. Whether Meta's conduct in obtaining Plaintiff's and Class members' personal information each time they signed into their MyDMV account or clicked on a hyperlink to check the status of a pending application is consistent with, and authorized pursuant to, any governmental purpose served by the Meta Pixel on the CA DMV website, if any;

e. Whether Meta's conduct violates the CIPA;

f. Whether Meta obtained consent from all parties to the communication as required for the

-18-

alleged conduct under the CIPA;

g.  Whether Meta is liable to Plaintiff and Class members for statutory damages under the DPPA and CIPA; and

h.  Whether Meta should be enjoined from obtaining Plaintiff's and Class members' personal information from the DMV website.

Dkt 1, ¶¶ 2, 54, 67. 79, 87.  Plaintiff's proposed Class and the relief he seeks systematically track the conduct and legal claims alleged in the Complaint, and have been crafted to protect the rights of the many millions of individuals whose federal and state privacy rights are affected by Meta's alleged conduct, while keeping the contemplated class litigation both manageable and superior to individual litigation.

**Meta's Statement:**

Meta does not believe the Court should address the class allegations until after it rules on Meta's motion to dismiss.  Meta disputes that Plaintiff may establish a basis for class certification under Fed. R. Civ. P. 23, or that Plaintiff will be able to show a class-wide basis for awarding damages.

**10. RELATED CASES**

The Parties are not currently aware of any cases meeting the requirements of Civil Local Rule 3-12 as interpreted by courts in this district that have been filed in this Court or any other.

**11. RELIEF**

**Plaintiff's Statement:**

Plaintiff seeks judgment against Meta and that the Court grant the following: class certification, an injunction against collecting Class members' personal information, statutory damages under the DPPA, statutory damages under the CIPA, pre- and post-judgment interest, reasonable litigation expenses and attorneys' fees, and such other and further relief as the Court deems necessary and appropriate.

The Court may award each Class member statutory damages of $2,500 for DPPA violations, and $5,000 for CIPA violations. The precise number of Class members during the relevant period is subject to discovery, thus Plaintiff cannot presently provide an estimate of the total damages potentially recoverable against Meta should the Class be certified and prevail at trial.

Plaintiff is unaware what basis Meta may have for asserting a counterclaim. Plaintiff will address any such counterclaim at the appropriate time, and anticipates that any such claim will fail to state a claim upon which relief can be granted.

***Meta's Statement:***

Meta contends that Plaintiff is not entitled to any relief from Meta and that the Complaint fails to state a claim upon which relief can be granted.  At this stage in the litigation, Meta is not in a position to describe the bases on which any alleged damages should be calculated in the event liability were to be established (which Meta contests).  Meta has not yet filed any counterclaims but reserves the right to do so when it responds to the Complaint.

**12. SETTLEMENT AND ADR**

Per ADR L.R. 3-5, the Parties and their counsel have read the handbook entitled "Dispute Resolution Procedures in the Northern District of California," available at www.adr.cand.uscourts.gov.

Plaintiff submits that private mediation may be appropriate after the ruling on the motion to dismiss and after receiving Meta's responses to Plaintiff's initial set of discovery.

Meta believes it is premature to engage in ADR or settlement discussions at this time.

**13. OTHER REFERENCES**

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or referral to the Judicial Panel on Multidistrict Litigation at this time.  The Parties reserve their rights on the suitability of these mechanisms if facts or circumstances change.

**14. NARROWING OF ISSUES**

The Parties are not presently aware of any issues that can be narrowed by agreement.

Plaintiff respectfully submits that permitting the reasonable and proportional discovery he has proposed to proceed at this time will provide a means to an efficient resolution of this action and assist in the narrowing of issues.

Meta believes that its motion to dismiss is likely to narrow or eliminate issues for discovery and for trial.

**15. EXPEDITED TRIAL PROCEDURE**

The Parties agree that this case is not appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

**16. SCHEDULING**

*Plaintiff's Statement*

Pursuant to Local Rule 16-9(b)(4), Plaintiff proposes the following schedule to guide these proceedings through discovery and an order on Plaintiff's motion for class certification.

| Event | Proposed Date |
|---|---|
| Discovery open for all purposes | March 16, 2023 |
| Exchange of initial disclosures | March 30, 2023 |
| Meta's motion to dismiss the Complaint and any Request for Judicial Notice | March 31, 2023 |
| Opposition to motion to dismiss | April 28, 2023 |
| Deadline for parties to file Stipulated Protective Order and ESI Protocol or present any disputes to magistrate | May 5, 2023 |
| Reply in support of motion to dismiss | May 19, 2023 |
| Motion to dismiss hearing | June 2, 2023 at 10:00 a.m., or as soon thereafter as convenient for the Court |
| Plaintiff's motion for class certification and class expert reports | March 22, 2024 |
| Meta's opposition to class certification and class expert reports | April 26, 2024 |
| Plaintiff's reply in support of motion for class certification and rebuttal class expert reports | May 15, 2024 |
| Class certification hearing | May 31, 2024, or as soon thereafter as convenient for the Court |
| Post-class certification case management conference | 30 days after the Court's ruling on class certification |
| Close of fact discovery | September 2024 |

***Meta's Statement***

Meta's position is that it is premature to set a case schedule before the Court rules on its anticipated motion to dismiss.  If the Court declines to stay discovery, Meta respectfully requests that the Court allow the Parties to meet and confer to discuss the case schedule before the Court issues a ruling on that schedule.  Meta does not agree to Plaintiff's proposed schedule, and the Parties have not had the opportunity to meet and confer about it.  At the March 16, 2023 Rule 26(f) conference, Meta explained its position that a discussion of the schedule was premature.  The Parties did not engage in any further discussion of specific dates, let alone of the detailed schedule Plaintiff has proposed here.

**17. TRIAL**

The Complaint contains a jury demand.  It is Plaintiff's position that the trial date, trial length estimate, and other pretrial deadlines should be addressed after the Court has ruled on Meta's motion to dismiss and Plaintiff's motion for class certification.

Meta position is that it is not possible to estimate the length of the trial before resolution of Meta's forthcoming motion to dismiss.

**18. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff filed his Certification of Conflicts and Interested Entities or Persons on January 26, 2023, Dkt. 10, which stated that there is no such conflict or interest (other than the named parties) to report.  Meta filed its Certification of Conflicts and Interested Entities or Persons on February 16, 2023, ECF 20, which stated that there is no conflict or interest (other than the named parties) to report.

**19. PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. OTHER**

At this time, the Parties do not request the attention of the Court with respect to matters other than those outlined above.

Dated: March 31, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: _____ */s/ Lauren Goldman* _____
                        Lauren Goldman

LAUREN R. GOLDMAN (admitted *pro hac vice*)
DARCY C. HARRIS (admitted *pro hac vice*)
lgoldman@gibsondunn.com
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
ABIGAIL A. BARRERA, SBN 301746
emccloskey@gibsondunn.com
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306

Dated: March 31, 2023

**COOLEY LLP**

By: _____ */s/ Michael G. Rhodes* _____
                        Michael G. Rhodes

MICHAEL G. RHODES, SBN 116127
KYLE C. WONG, SBN 224021
CAROLINE A. LEBEL, SBN 340067
rhodesmg@cooley.com
kwong@cooley.com
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:  (415) 693-2222

*Attorneys for Meta Platforms, Inc.*

Dated: March 31, 2023

**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**


By: _____ */s/ Melissa Gardner* _____
      Melissa Gardner

MICHAEL W. SOBOL, SBN 194857
DAVID T. RUDOLPH, SBN 233457
MELISSA GARDNER, SBN 289096
JACOB H. POLIN, SBN 311203
NABILA ABDALLAH, SBN 347764
msobol@lchb.com
drudolph@lchb.com
mgardner@lchb.com
jpolin@lchb.com
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Dated: March 31, 2023

**CARNEY BATES & PULLIAM, PLLC**


By: _____ */s/ Allen Carney* _____
      Allen Carney

JOSEPH HENRY BATES, III, SBN 167688
ALLEN CARNEY (admitted *pro hac vice*)
COURTNEY E. ROSS (admitted *pro hac vice*)
hbates@cbplaw.com
acarney@cbplaw.com
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff and the Proposed Class*


## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Melissa Gardner, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: March 31, 2023                LIEFF CABRASER HEIMANN & BERNSTEIN LLP

By:  _/s/ Melissa Gardner_____
         Melissa Gardner