1

GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:   (415) 393-4622
Facsimile:   (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone:   (213) 229-7311
Facsimile:   (213) 229-6311

*Attorneys for Defendant Meta Platforms, Inc.*

*Additional Attorneys in Signature Block*

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
MICHAEL W. SOBOL, SBN 194857
msobol@lchb.com
DAVID T. RUDOLPH, SBN 233457
drudolph@lchb.com
MELISSA GARDNER, SBN 289096
mgardner@lchb.com
JACOB H. POLIN, SBN 311203
jpolin@lchb.com
NABILA ABDALLAH, SBN 347764
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

CARNEY BATES & PULLIAM, PLLC
JOSEPH HENRY BATES, III, SBN 167688
hbates@cbplaw.com
ALLEN CARNEY (admitted *pro hac vice*)
acarney@cbplaw.com
COURTNEY E. ROSS (admitted *pro hac vice*)
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

MIKHAIL GERSHZON, individually and on behalf of others similarly situated,

Plaintiff,

v.

META PLATFORMS, INC.

Defendant.

Case No. 3:23-cv-00083-SI

**JOINT STATEMENT**

Date:     April 20, 2023
Time:     9:00 a.m.
Courtroom: 2, 5th Floor
Judge: Hon. Virginia K. DeMarchi
Action Filed: January 6, 2023

Counsel for Plaintiff Mikhail Gershzon ("Plaintiff") in the above-captioned action ("DMV case") and counsel for Meta Platforms, Inc. ("Meta") met and conferred on April 11, 2023 regarding the topics addressed in this joint statement.  The parties set forth below their positions on topics to be addressed at the upcoming April 20, 2023 discovery conference before this Court.

As a brief procedural background, on March 31, 2023, Meta filed a motion to dismiss Plaintiff's Complaint.  *See* Dkt. 31.  That motion is set for hearing on June 9, 2023.  Dkt. 32.  On April 7, 2023, Judge Illston held an initial case management conference in this case, and directed plaintiff to attend the April 20, 2023 discovery conference before this Court.  *See* Dkt. 34.  On April 7, 2023, this Court directed the parties to submit a joint statement in advance of the April 20 conference.  *See* Dkt 35.

## 1.  <u>THE TOPICS TO BE DISCUSSED DURING THE APRIL 20, 2023 CONFERENCE</u>

<u>Meta's Position:</u>

As this Court is aware, several cases that are pending in this district involve similar allegations as in the above-captioned case.  In each of these cases, the plaintiffs allege that Meta received sensitive information through Meta's Pixel, even though Meta's policies explicitly prohibit developers from sending Meta such data.  *See In re Meta Pixel Tax Filing Cases*, Case No. 22-cv-07557-SI (VKD) ("consolidated *Tax* case"); *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO (VKD) ("consolidated *Healthcare* case"); *Gershzon v. Meta*, No. 3:23-cv-00083-SI (VKD) ("*Gershzon*").

Judge Orrick and Judge Illston have directed the parties to consider how to make discovery in these matters efficient, and they have facilitated this process by referring discovery in these cases to this Court for coordination.  *See* March 14, 2023 Hrg. Tr., *In re Meta Pixel Healthcare Litig*, No. 3:22-cv-03580-WHO (VKD), at 14:8–13 (Judge Orrick noting that "Judge DeMarchi is going to handle discovery on all of the [Pixel] cases" and instructing the *Healthcare* parties to "discuss other ways of how to make this as efficient as [the parties] can"); *In re Meta Pixel Tax Filing Cases*, 22-cv-07557-SI (VKD), Dkt. 47 at 1–2 (describing Judge Illston's order requiring the parties to attend the *Healthcare* discovery conference and requesting that they "use the materials already submitted by the parties in the . . . *Healthcare Litigation* matter as a starting point"); *Gershzon*, No. 3:23-cv-00083-SI (VKD), Dkt. 35 at 1–2 (same).

In accordance with that directive, Meta has set out in detail below a proposal regarding how discovery can be coordinated among the three cases that have been referred to this Court for discovery—the consolidated *Tax* case, the consolidated *Healthcare* case, and *Gershzon*. Consistent with that proposal, Meta believes that the Protective Order, ESI Protocol, and Clawback Order that are ultimately entered in the consolidated healthcare case *In re Meta Pixel Healthcare Litigation* should also be adopted in this case, and all other Meta Pixel cases in which discovery is being coordinated in front of Your Honor. Meta has been meeting and conferring in good faith with the *Healthcare* plaintiffs regarding each of those documents, and the parties have made significant progress in reaching agreement.

With respect to the issues described in the March 7 Case Management Statement submitted in the *Healthcare* case, Meta believes it will be helpful for the Court to provide guidance to the parties. Once the parties have received that guidance, Meta believes that it would be most productive for Meta and the *Healthcare* plaintiffs to complete the process of conferring on the Protective Order, ESI Protocol, Clawback Order, and related issues. As soon as those negotiations are complete, the plaintiffs in the *Tax* case and *Gershzon* can provide comments or proposed revisions which may be specific to their respective cases. Once Meta and the *Healthcare* plaintiffs have conferred with the *Tax* and *Gershzon* plaintiffs regarding any such specific requests, to the extent any issues remain disputed, the parties can then raise such issues with this Court. Meta believes that process will most efficiently facilitate the parties' agreement on a single Protective Order, ESI Protocol, and Clawback Order to govern all of the Pixel-related cases referred to this Court.

To that end, Meta will not now respond to each of the points raised by Plaintiff below, and instead will respond to those issues, to the extent they still remain areas of dispute, once Meta and the *Healthcare* plaintiffs have finished meeting and conferring regarding the Protective Order, ESI Protocol, and Clawback Order. (Further, as of today's date, plaintiff still has not shared with Meta its proposed Protective Order, ESI Protocol, or Clawback Order, so Meta cannot yet consider or respond to those drafts.) Meta notes that it and the *Healthcare* plaintiffs have already briefed many of these same issues in the March 7, 2023 Case Management Statement in that case, including, for example, privilege logs, document families, and search protocol. *See In re Meta Pixel Healthcare Litig.*, No.

3:22-cv-03580-WHO (VKD), Dkt. 191.  Meta believes that Meta's proposed Protective Order, ESI Protocol, and Clawback Order attached to that March 7 statement are appropriate for this case, as well.

Finally, Meta clarifies certain of the representations made by Plaintiff below, which are inconsistent with the parties' discussions regarding the ESI Protocol that Meta has proposed in the *Healthcare* case.

- Section 5(e)(1):  Backup systems and/or tapes used for disaster recover are sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B).  In Meta's experience, it is highly unlikely that there is unique discoverable information only on backup systems or disaster recovery tapes.  The information in these sources is duplicative of other, more accessible sources of information.  Even if there were unique information on those types of media, any potential relevance is far outweighed by the undue burden in producing data from those sources.  Accordingly, ESI from these sources will be retained pursuant to standard business processes, but Meta should not have to otherwise preserve, search, pull, review, or produce information or documents from these sources.  The purpose of this provision is to make clear that even searching these sources to determine if they contain potentially relevant information is too burdensome, and is not proportional under the circumstances.

- Section 5(e)(2):  Systems no longer in use are likewise not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B).  For the same reasons discussed above regarding backup systems and/or tapes used for disaster recovery, this data source is included in this section to make clear that even searching this source to determine if it contains potentially relevant information is too burdensome, and is not proportional under the circumstances.

- Section 5(e)(4):  Counsel for Meta explained that this provision is intended to apply to all instant messaging and chat platforms that are not chronicled to an email archive system.  Texting on cell phones was an example of the types of instant messaging contemplated by this provision, but counsel for Meta never indicated this provision was limited to texting on cell phones.

- Section 5(f)(6):  Counsel for Meta explained that server, system, or network logs refers to logs automatically created and maintained by either the server, system, or network, that consist of a

list of activities performed by the given source.  In Meta's experience, server, system, and network logs rarely contain unique discoverable data and also are unduly burdensome to search, review, and collect.  Given that this source will likely not have unique data and Meta can obtain relevant data from other, less burdensome sources, data from this source need not be preserved under the proportionality factors.

- Section 5(f)(7):  With respect to "dynamic fields in databases or log files not stored or retained in the usual course of business," as the description in the ESI Protocol makes clear, Meta does not store or retain dynamic fields in databases or log files in the usual course of business, and Meta should not be required to create a new business process for the purpose of this litigation in an attempt to store or retain this data.  Doing so would be very burdensome and not proportionate to the needs of this case.

- Section 6:  Meta's proposed search protocol does not unduly "minimize" Plaintiffs' role in search methodologies—in fact, it invites meaningful participation from Plaintiffs in the proposed process.  Meta refers the Court to its description of its proposed search methodology in the March 7, 2023 Joint Case Management Statement submitted in the Healthcare case.  *See In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO (VKD), Dkt. 191 at 22–25.

- Section 7:  With respect to email threading, counsel for Meta said we could look into this question posed by Plaintiff, and our understanding is that the date metadata described by Plaintiff is not a feature of email threading that can be provided, although it may be possible to provide the start date for each thread.

- Appendix, section 1:  With respect to the fact that links within documents are not considered attachments, the parties did not discuss searching for and producing responsive Google Docs in general, nor did Meta make representations regarding Meta's use of Google Docs in the ordinary course of business.  Regardless of the prevalence of the use Google Docs or any other system that allows for electronic links to documents, links to such documents are not attachments.  *See In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580-WHO (VKD), Dkt. 191 at 26–27.  Plaintiff proposed for the first time in this joint submission a process whereby he would identify "documents that are identified by hyperlink in a responsive email but which

were not produced" and request that Meta produce those documents.  Meta is willing to meet and confer with Plaintiff regarding this proposal.

- Appendix, section 11:  Counsel for Meta explained that the file formats listed in this section are designed to identify formats that the parties all agree provide data in a reasonably usable format. There is nothing inconsistent in providing a list of reasonably usable formats and the first sentence of this section confirming that the parties agree to meet and confer regarding production format to ensure that any information produced is reasonably usable by the receiving party.  If plaintiff has other file formats that he would like to propose adding to the list Meta provided, Meta is willing to meet and confer regarding that proposal.

**Plaintiff's Position:**

Plaintiff proposes, as explained below, limited departures from adopting the full text of the Protective Order, ESI Protocol, and Clawback Order proposed by Plaintiffs in the *In re Meta Pixel Healthcare Litigation* ("Healthcare Plaintiffs"), after having reviewed them pursuant to this Court's direction.  Plaintiff agrees that those materials serve as a good starting point for similar documents to be entered here as well as a starting point for Plaintiff's proposals regarding document preservation. Plaintiff also agrees in principle that coordination on these four topics serves the interests of efficiency.

Plaintiff disagrees with Meta's suggestion above that the Court should delay entry of a Protective Order, ESI Protocol, or Clawback Order in the DMV case pending additional meet and confer efforts.  Plaintiff notes that he sent Meta a draft proposed Protective Order on February 24, and Meta declined to discuss the matter until after Judge Illston ordered that the DMV Plaintiff be included in the April 20 conference.  The parties' positions are set forth in this joint statement, and are ripe for decision.  Plaintiff submits herewith the following exhibits:

**Exhibits 1-2**: (1) Plaintiff's Proposed ESI Protocol and (2) a Redline from the Healthcare Plaintiffs' Proposal;

**Exhibit 3**: (3) Plaintiff's Proposed Protective Order, which is the same as that proposed by the Healthcare Plaintiffs;

**Exhibits 4-5**: (4) Plaintiff's Proposed Clawback Agreement and (5) a Redline from the Healthcare Plaintiffs' Proposal.

Plaintiff provides redlines from the Healthcare Plaintiffs' proposal consistent with the guidance in this Court's Standing Order for Civil Cases to provide a redline showing modifications from the starting point. For ease of review, only differences in the text are in redline, Plaintiff did not track differences in formatting or between parties and counsel.

### 1. ESI / DOCUMENT PRESERVATION

Plaintiff agrees with the Healthcare Plaintiffs' position that Meta must engage in substantive discussions about its preservation of potentially relevant ESI. *See* Dkt. 191 at 10-13.

Plaintiff's primary concern with respect to Meta's preservation efforts and disclosures centers on data transmitted to Meta from the DMV website, which contains information regarding putative class members that may be unavailable from other sources. Meta's counsel have not been prepared to answer fundamental factual questions about what it is preserving, such as whether automatic destruction of data at issue in Plaintiff's Complaint has been suspended; whether Meta considers data transmitted from the DMV website to fall within its preservation obligations; for what date range is Meta preserving ESI; and how Meta would describe the location or systems where ESI is stored and being preserved.

Given the importance of data in Meta's possession, it is critical that all parties have an informed understanding of what is transmitted, how and where it is stored, and what is being preserved at the earliest possible time. Plaintiff strongly supports the Healthcare Plaintiffs' efforts in this regard, and believes that these fundamental issues regarding Meta's preservation efforts are appropriate to address on a coordinated basis.

### 2. ESI PROTOCOL

#### A. Preservation, § 5

Plaintiff is amenable to and adopts the Healthcare Plaintiffs' approach to document preservation, namely to require disclosure of the evidence at issue and, if the unavailability of evidence would affect the claims and defenses in the case, to discuss a stipulation for minimizing the associated prejudice.

Meta requests an order to exclude certain categories of potentially relevant ESI from its preservation obligations without such disclosures or discussion. Due to Meta's lack of transparency, Plaintiff must object to the following provisions in Meta's proposal, in particular:

**§ 5(e)(1)** – "Backup systems." Meta could not say if its backup systems contain data transmitted from the DMV that is unavailable from other Meta systems. If backup systems are entirely duplicative of more accessible information, Plaintiff would not oppose this provision, but Meta did not provide that information.

**§ 5(e)(2)** – "Systems no longer in use." Meta could not say if any systems subject to this exclusion contain data obtained via the Meta Pixel. Plaintiff opposes this provision to the extent it would Meta to destroy data unavailable from other sources without explaining the undue burden of preserving it as applied to data from the DMV in specific systems.

**§ 5(e)(4)** – "Chat." During the parties' discussion on April 11, Plaintiff understood Meta to say that instant messages and chat features Meta uses in the ordinary course of its business are chronicled to an email archive system and to indicate that this provision would apply only to texting on cell phones. If that is the case, this provision is redundant of § 5 (e)(8) and thus unnecessary. If that is not the case, then Meta must disclose what messaging systems it seeks authorization not to preserve, what is contained therein, and discuss possible alternatives if warranted by the evidence at issue.

**§ 5(f)(6)** – "Logs." Meta says that server, system, or network logs contain data during transmission to a location where it is stored, indicating it may be duplicative of stored data, but could not say whether the data is anonymized or otherwise altered upon storage. Plaintiff opposes this provision to the extent it permits Meta to destroy data unavailable from other sources without explaining the undue burden of preserving it as applied to data from the DMV.

**§ 5(f)(7)** – "Dynamic data." Meta could not say whether data it obtains via the Meta Pixel is stored within dynamic fields, and thus overwritten with the passage of time. Plaintiff opposes this provision to the extent it permits Meta to destroy data unavailable from other sources without explaining the undue burden of preserving it as applied to data from the DMV.

**B. Search Protocol, § 6**.

Plaintiff agrees with and adopts the Healthcare Plaintiffs' position that any search methodology for responsive ESI responsive should be transparent, incorporate input from the Requesting Party, and provide timely and meaningful opportunities to seek guidance from the Court. *See* Dkt. 191 at 14-16. "It is well-established that, when search terms are used in ESI discovery, the parties should cooperate to select reasonable search terms and custodians." *Baranco v. Ford Motor Co.*, No. 17-03580, 2018 WL 9869540, at *1 (N.D. Cal. Apr. 10, 2018) (collecting cases); *see also id.* ("these discussions should occur before expensive searches and depositions.") Further, a protocol that grants Meta the unilateral right to apply TAR after first using search terms "would not be fair or efficient" even if the search terms had been negotiated bilaterally. *See In re Telescopes Antitrust Litig.*, No. 20-03642, Dkt. 201 (N.D. Cal. Oct. 7, 2021) (DeMarchi, J.). Meta's proposal to minimize Plaintiffs' role in search methodologies from the outset creates a significant risk that Plaintiffs will not be able to identify

inadequacies in Meta's productions until their document review is well underway, late in proceedings. The Healthcare Plaintiffs' proposal contemplates levels of transparency that are more likely to result in fair and efficient discovery.

### C.  Privilege logs, § 9.

Plaintiff agrees with the Healthcare Plaintiffs' position that privilege logs should be produced with time to resolve disputes before materials that should have been produced become necessary in the litigation.  As pertains to the DMV case, Plaintiff notes that he has proposed and, pending a contrary order from the Court, intends to move for class certification **before** the close of fact discovery.  At class certification, Plaintiff will bear the burden of affirmatively demonstrating "through evidentiary proof" that Rule 23 is satisfied. *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1003-04 (9th Cir. 2018). Plaintiff thus proposes a modest modification from the Healthcare Plaintiffs' position in the ESI Protocol that would ensure privilege logs are produced sufficiently in advance of that motion.

### D.  Document families, § Appendix 1, § 1.

Plaintiff agrees with the Healthcare Plaintiffs' position that the lack of a technical "family" relationship between a hyperlinked document and an email is no basis to withhold a linked document from production.  As pertains to production of such documents by default, Meta has indicated that there is no technologically feasible way for it to identify relationships between emails and hyperlinks within emails, and that it would be unduly burdensome to identify and produce all linked attachments as a matter of course.  However, Meta has also indicated that its employees routinely use software such as "Google Docs" in the ordinary course of business, resulting in hyperlinks frequently being shared in lieu of email attachments.  Failing to adequately search for and produce those documents would be prejudicial to Plaintiff.

Plaintiff's position is that Meta can reduce the prejudice arising from this business practice by (1) ensuring a robust production from custodial and non-custodial files other than email accounts so as to capture responsive materials likely to be shared via hyperlink; and (2) agreeing, upon request, to promptly produce documents that are identified by hyperlink in a responsive email but which were not produced.  This would put hyperlinked documents on the same footing as email attachments which would be produced by default, while distributing the burden of identifying the documents for

-8-

production in part to Plaintiff.  Plaintiff thus proposes a modification from the Healthcare Plaintiffs' position in the ESI Protocol in the event the Court does not adopt their proposal in full.

### E.  Cooperation - Cost-shifting provision, § 2.

Plaintiff agrees with the Healthcare Plaintiffs' position on excluding this provision. There is no basis to require an agreement on these issues that would exceed the scope of the applicable federal rules, and to the extent Meta contends its proposal is consistent with the rules, the provision is unnecessary and redundant.

### F.  Email threading, § 7.

Plaintiff agrees with the Healthcare Plaintiffs that email threading is not appropriate and adopts their position that it should not be permitted.  Plaintiff disagrees with Meta's proposal to use email threading because, while it may reduce the burdens of document review for Meta, it is not the only means to do so and it shifts inefficiencies and burdens to other parties.  The ability to sort and filter correspondence by date is a valuable tool in reviewing another party's discovery, for example when attempting to learn what was communicated in advance of a particular meeting.  Plaintiff understands that Meta would not be able to maintain or produce the date metadata associated with the various "threaded" emails in particular correspondence, so only the last and possibly first date in time would be available, rendering any sorting or filtering unreliable at best.  Similarly, dates for emails withheld on a privilege log would only include only one or two dates, further reducing already limited clarity regarding what is being withheld.

Meta states that the benefit to Meta of email threading is to reduce the number of discrete documents that Meta must review for responsiveness and privilege, but it stands to reason that if Meta's email threading software can reliably and automatically identify each message in a particular thread, then Meta need only review the "complete" thread.  If an entire thread is nonresponsive, then the emails therein are non-responsive. If an entire thread is privileged, then all emails therein are privileged.  If a thread is responsive and non-privileged, Meta could readily identify each email associated with that thread and produce them all.  Only emails in responsive threads that contain both privileged and non-privileged information may require further review, to ensure that non-privileged emails are produced.

As such, the limited benefit to Meta of email threading as compared to other available options is outweighed by the practical difficulties it would create for the receiving party.

### G.  Native Files and Hidden Data, Appendix §§ 5, 10.

Plaintiff has no objection to the Healthcare Plaintiffs' position on these issues.  With respect to the disputes over hidden data and files to be produced in native format, Plaintiff's position is that producing documents in native format is the most effective means of reducing the risk that "hidden" data is overlooked and not produced.  In the event the Court is not inclined to order that all files be produced in native format as the Healthcare Plaintiffs propose, Plaintiff proposes a modest modification for Microsoft PowerPoint presentations.  Requiring that PowerPoint files be produced in native format not only ensures that comments and other hidden data in the files are not inadvertently withheld, but also ensures that dynamic content within the presentations is produced.  TIFF images of a PowerPoint presentation would not accurately represent the presentation as used for ordinary business purposes, and may be difficult to read.

### H.  Databases and Other Structured Data, § 12(a).

Plaintiff agrees with and adopts the Healthcare Plaintiffs' position that ESI Protocol should not specify presumptively reasonable formats for database productions.  Plaintiff has conferred with Meta and received confirmation that its proposal for § 12(a) is not intended to prevent a party from producing tables or data from a database in forms other than those identified in Meta's proposed provisions.  This could include a form that can be automatically transferred to a SQL database for efficient analysis, which may be necessary to expert analysis at a later stage of the DMV case.  Because Meta's proposed language seems contrary to that understanding, however, it should not be included.[1]

---

[1] Plaintiff understands from Meta that the Healthcare Plaintiffs' request on March 7 for a "DUPLICATE FILEPATH" metadata field has been withdrawn. Plaintiff does not propose that it be included and does not track the absence of that field as a departure from the Healthcare Plaintiffs' proposals in the redline attached as Exhibit 2.

### 3.  PROTECTIVE ORDER

#### A.  Disclosures to Experts, § 7.3-7.5

The Healthcare Plaintiffs have agreed to extremely restrictive limitations on experts, who would not be permitted to access documents bearing any confidentiality designation if they worked for Meta or one of its competitors at any time.  In the interest of facilitating the prompt entry of a Protective Order, Plaintiff is willing to accept these restrictions subject to the terms that the Healthcare Plaintiffs have proposed, *i.e.*, with clarification that Plaintiff may seek leave from these restrictions as may be required from the Court. Plaintiff understands from Meta that they have reached agreement with the Healthcare Plaintiffs regarding this provision.

#### B.  Definition of source code, § 2.16.

Plaintiff agrees with the Healthcare Plaintiffs on this issue.  Plaintiff's position is that the parties should use the language from the Model Order for the definition of "source code" because that eliminates uncertainty regarding the application of case law interpreting the term as defined in the Model Order.  Meta maintains that its proposed edits are merely intended to clarify the language in the Model order without substantively changing it, but given the current information imbalance as between Plaintiff and Meta regarding Meta's computer code, Plaintiff cannot reasonably agree to deviate from the Model Order and the standards set forth in this District's case law regarding "source code" as defined therein.

#### C.  Leaked documents, § 3.

Plaintiff agrees with and adopts the Healthcare Plaintiffs' position regarding confidential treatment of documents disseminated to the public or published by large media organizations.  There is little to be gained by requiring the parties to comply with this District's procedures for confidential information, such as redacting references to it in public filings and then moving for it to be unsealed, if the information is already part of the public record.

### 4.  RULE 502(d) / CLAWBACK ORDER

#### *Plaintiff's Statement:*

Plaintiff has no objection to the Healthcare Plaintiffs' proposal that the parties be permitted to reference the contents of clawed back documents in the context of challenging a privilege designation

that they have a good faith basis to believe is improper.  However, in light of this Court's guidance in *In re Google RTB Consumer Privacy Litigation*, Plaintiff is also amenable to a clawback order that precludes such reference provided that the relevant privilege log includes "a description of the challenged document that is sufficiently specific to permit the receiving party to understand and evaluate the privilege claim."  No. 21-02155, 2022 WL 1316586, at *4 (N.D. Cal. May 3, 2022).  If the Court does not adopt the Healthcare Plaintiffs' proposal, Plaintiff proposes a minor modification to the Clawback Order as an alternative in Exhibits 4-5.

## 2. <u>META'S PROPOSAL FOR COORDINATING DISCOVERY AMONG PIXEL MATTERS</u>

**<u>Meta's Position:</u>**

As noted above, Meta herein proposes how discovery can be coordinated among the three Pixel-related cases that have been referred to Your Honor for discovery—the consolidated *Tax* case, the consolidated *Healthcare* case, and *Gershzon* (collectively, the "Pending Cases").  Coordinated discovery will allow the Pending Cases to proceed in an efficient, non-duplicative manner that will benefit both the parties and the Court.  The  procedural posture of the Pending Cases make them well situated for discovery coordination:  to date, none of the Pending Cases has a scheduling order, a protective order, an ESI protocol, or a clawback order.  Meta is represented by the same counsel in all of the Pending Cases, and each plaintiff group is represented by capable counsel who will be able to collaborate to ensure efficient, non-duplicative discovery.

Meta proposes the following framework.

### *(1) Progression of discovery*

The motion to dismiss the consolidated *Healthcare* case will be fully briefed by July 17, 2023.  As Judge Orrick has instructed, discovery is proceeding in the consolidated *Healthcare* case while the motion to dismiss is pending.  On March 31, 2023, Meta filed its motion to dismiss the *Gershzon* case, and that motion is set for hearing on June 9, 2023.  Meta intends to move to dismiss the consolidated *Tax* case once a consolidated complaint is filed.  Discovery in the *Tax* case has not begun, and discovery in *Gershzon* is stayed at least until this Court's April 20, 2023 hearing.

On March 30, 2023, Plaintiff's counsel in *Gershzon* sent an email stating they intend to issue a notice of deposition for a Meta employee and asked about the individual's availability in April 2023. Plaintiff's counsel in *Gershzon* also served an initial set of interrogatories and requests for production on April 6, 2023.  During the April 7, 2023 Case Management Conference in *Gershzon*, Judge Illston stayed discovery in that case until the April 20, 2023 discovery conference before this Court.  *See Gershzon*, No. 3:23-cv-00083-SI (VKD), Dkt. 34.  Meta proposes that all of this discovery in *Gershzon* be withdrawn so that written discovery and depositions can be coordinated with all of the plaintiffs in the Pending Cases as described below.

Meta proposes that plaintiffs across the Pending Cases (the "Plaintiffs' Group") coordinate to negotiate structural aspects of discovery common to all cases, including a protective order, ESI protocol, and clawback order.   Meta proposes that the starting point for these discussions should be the materials that have already been prepared in the consolidated *Healthcare* case, which will be finalized based on the guidance provided by this Court during and after the April 20, 2023 hearing.  Meta proposes that these materials should then be entered by the Court in all of the Pending Cases.  This will help facilitate the efficient exchange and production of information in all Pending Cases:  coordination of discovery will be impossible without a consistent set of ground rules.

Until discovery begins in a case, the parties in that case will not receive any discovery beyond the structural orders described above.

**(2) Coordinated written discovery**

The plaintiffs in the consolidated *Healthcare* case have issued Requests for Production ("RFPs") and an initial set of Interrogatories, and Meta has responded to those requests.  Negotiations among the parties to address these RFPs and Interrogatories are ongoing.  Meta proposes that when discovery begins in the consolidated *Tax* case and resumes in *Gershzon*, the plaintiffs in the consolidated *Tax* case and *Gershzon* will identify the specific requests in the *Healthcare* plaintiffs' existing discovery requests that are "global" in nature (i.e., that seek information relevant to more than one of the Pending Cases).  Meta will thereafter produce the same "global" information and documents to the plaintiffs in those cases that Meta produced to the *Healthcare* plaintiffs (if any), subject to any objections by Meta

that the requests designated by those plaintiffs are not relevant to a particular case.

After the plaintiffs in the consolidated *Tax* case and *Gershzon* identify the existing "global" discovery requests, Meta proposes that to the extent any further written or document discovery on issues relevant to two or more cases is sought, the Plaintiffs' Group will work together to issue and serve coordinated, written discovery requests on "global" issues relevant to the Pending Cases.  The Plaintiffs' Group will issue only one copy of written discovery requests to Meta on these "global" issues (RFPs, Interrogatories, and Requests for Admission), rather than issuing duplicative requests covering similar issues across the three cases.  Meta may do the same to the extent there are efficiencies to be gained by issuing a single set of requests to all Plaintiffs at once.  Meta's responses to any "global" requests, and any documents Meta produces, will be produced to all parties at the same time (once discovery is underway in all cases), and any information and documents will be treated as having been obtained through discovery in each of the Pending Cases.

In addition to "global" written discovery requests, plaintiffs in individual cases may serve supplemental, case-specific written discovery requests on Meta, up to certain numerical limits agreed to by the parties or ordered by the Court.  However, case-specific requests must be case-specific and not overlap with a "global" request.  Meta is amenable to meeting and conferring with the Plaintiffs' Group concerning numerical limits for "global" and case-specific requests.

Meta's responses to these case-specific requests, and any documents Meta produces for case-specific requests, will be sent only to the plaintiffs in each particular case and will be treated only as having been obtained in that particular case.

### (3) Coordinated depositions

Meta proposes that fact witnesses be deposed only once across the Pending Cases.  For example, if a Meta witness would have been deposed three separate times (once in each of the Pending Cases), that witness would instead be deposed once.

More specifically, depositions of Meta witnesses would proceed as follows:  The Plaintiffs' Group would coordinate and select a questioner from among plaintiffs' counsel to ask "global" questions that apply to issues relevant to all of the Pending Cases.  Counsel for Meta would then have an opportunity to ask redirect questions on "global" issues.  The questions and answers during the

"global" section of each deposition would be treated as if taken in all of the Pending Cases.  After the "global" section, counsel representing plaintiffs in each of the three individual Pending Cases would have the opportunity to ask the witness case-specific questions (one attorney per case) outside the presence of counsel for the other plaintiffs.  Counsel for Meta would then have a similar opportunity to ask redirect questions on case-specific issues.  The questions and answers during these sections of each deposition would be treated as if taken in the individual case to which that section applies.

The Plaintiffs' Group will together decide on the Meta witnesses they plan to depose (and any third-party witnesses they decide to subpoena), issuing only a single notice or subpoena for each witness.  The Plaintiffs' Group will also coordinate the time allocation between the "global" questioning and the case-specific questioning described above.  Meta anticipates that, while the standard 7-hour period will be appropriate for many witnesses, in some circumstances where a witness is deposed on both "global" and case-specific issues, the parties will work together to schedule an adequate amount of on-the-record time in excess of the time limits established by Fed. R. Civ. P. 30(d)(1), if necessary.

The parties may also take depositions that are relevant only to a single case, so long as all parties understand that the witness may not later be deposed a second time in any of the Pending Cases.  In this situation, the deposition would proceed in a standard fashion, with the deposition being treated as taken only in that specific case, and with only the relevant parties present.

Meta looks forward to discussing this framework with the Court during the April 20 hearing.  As the Pending Cases evolve, it will likely be necessary to schedule further case management conferences to modify this framework as appropriate.

In the meantime, Meta notes that Plaintiff's objections to coordinating discovery between the Pending Cases are misguided.  Meta is simply offering a way in which the Court and the parties to the Pending Cases can make discovery most efficient, as both Judge Orrick and Judge Illston encouraged, including by referring the Pending Cases for discovery before Your Honor.  *See Pieterson v. Wells Fargo Bank*, N.A., 2019 WL 1465355, at *2 (N.D. Cal. Feb. 8, 2019) ("[c]oordination is an inherently flexible practice and may be accomplished in many ways," including by "taking care to avoid duplicative discovery").

Contrary to Plaintiff's suggestion, Meta's proposal will not impede discovery in this case.  As Plaintiff concedes, the "same Meta technology is involved" in each of the three matters, and the claims overlap in numerous ways.  *See* Dkt. 1 at 25 (Plaintiff alleging that Meta violated the California Invasion of Privacy Act by "track[ing] and intercept[ing] Plaintiff's and Class members' internet communications . . . through the DMV website" via the "Meta Pixel").  As Plaintiff also notes, discovery in this case is in its infancy, making it ripe for coordination with the others.

Meta recognizes that there are differences between the Pending Cases, which is why its proposal contemplates that the plaintiffs in each case can make case-specific requests, in addition to any global requests.  *See, e.g.*, Manual for Complex Litigation, Fourth, § 20.14 (directing judges to "encourage techniques that coordinate discovery and avoid duplication" in coordinating several cases); *see id.* §§ 11.423, 11.443, 11.452, and 11.464.  The same is true for Plaintiff's concerns about depositions:  Meta's proposal contemplates that the parties will work together to arrange depositions to cover both general *and* case-specific issues, while avoiding unnecessary duplication of effort and burden to witnesses to the extent practicable.  Plaintiff misreads Meta's proposal in this respect:  Meta does not intend to "prohibit case-specific depositions until 'global' depositions are conducted."  Under Meta's proposal, depositions covering both categories may occur at the same time; that is why they will be efficient.  *See In re Telescopes Antitrust Litig.*, 2021 WL 1541692, at *2 (N.D. Cal. Apr. 20, 2021) (DeMarchi, J.) (requiring parties in separate cases to coordinate on taking depositions of witnesses relevant to both matters, and noting "the Court's authority to manage discovery and to require coordination in the interest of justice"); *Tawnsaura Grp., LLC v. Maximum Hum. Performance, LLC*, 2012 WL 12331032, at *3 (C.D. Cal. Nov. 7, 2012) (coordinating discovery such that witnesses would be deposed only once and "scheduled for enough time to cover all [] individual issues, with common issues handled in a coordinated and nonduplicative manner," and further requiring the parties to "agree on a number of common discovery requests . . . with a small number of additional requests").

Finally, Meta disagrees with Plaintiff's claim that "Meta has failed to meaningfully meet and confer with Plaintiff" about coordination, as well as the suggestion that Meta sprung this proposal on Plaintiff just "two days before this joint filing."  Judge Illston ordered Plaintiff to attend the upcoming hearing during the case management conference on *Friday, April 7* (Dkt. 34), which led Your Honor

to issue an order requesting this joint submission later that day (Dkt. 35).  Meta met and conferred with Plaintiff just two business days later, on April 11, and verbally described its coordination proposal at that time.  Meta then sent the written proposal to Plaintiff the next day, April 12.

In short, that there are differences between the Pending Cases is not a sufficient reason to discard efforts to streamline discovery where possible.  Coordinating discovery in these cases is the most efficient path forward for both the Court and the parties.

**Plaintiff's Position:**

Plaintiffs' position is that coordinating on universal litigation fundamentals such as an ESI Protocol and Protective Order, within reason, makes sense for the DMV case.  Such orders must be entered in all cases; they rarely vary in a material way across proceedings; and where, as here, Your Honor is overseeing proposed orders in each case, coordination clearly minimizes redundancy and serves the interest of efficiency.

For Meta's document preservation too, efficiency is a primary concern because critical evidence may be jeopardized if Meta's hence-undisclosed preservation efforts are lacking, even though it raises some case-specific considerations (*supra* Section 1).  Plaintiff thus welcomes and appreciates this opportunity for coordination to obtain the factual information necessary to understand and ensure the adequacy of those efforts at the earliest possible time.

With respect to the progress of discovery, however, "efficiency" must cede to other interests.  Plaintiff and the Class of California DMV website users he represents have a legitimate interest in promptly resolving their claims and securing relief, including prospective relief.  The DMV case raises materially different issues than the Healthcare and Tax cases even though some of the same Meta technology is involved.  It concerns one California-based website and privacy interests codified in the Driver's Privacy Protection Act, the elements and proof of which are not at issue in other cases.  Meta's proposal to restrict and even withdraw Plaintiff's case-specific discovery so that Meta can prioritize discovery in the Healthcare case, which concerns thousands of websites on a nationwide scale and numerous different causes of action, would unfairly subvert the interests of Plaintiff and the proposed DMV Class.  Meta's proposal to prohibit case-specific depositions until "global" depositions are conducted, including to require that any case-specific questions be asked in the context of a global

deposition on a date convenient for Meta, the witness, and Plaintiffs' counsel in three cases, has the same faults, and logistically is likely to be unworkable.

Meta's suggestion that Judge Illston stayed discovery in the DMV case "at least" until April 20 overstates the record and provides no basis to order the prejudicial framework it proposes. The DMV parties discussed Meta's request to stay discovery at length in their Rule 26(f) Report (Dkt. No. 30), and Judge Illston was clear during the April 7 Conference that she would not grant Meta's request for an extended stay. She stayed discovery only for 13 days until the April 20 conference, noting that Meta's responses to Plaintiff's outstanding discovery would not even be due before April 20, and her order would provide a "clear demarcation it [discovery] starts on April 20." Dkt. No. 37 (Hearing Tr.) at 7:13-22; Dkt. No. 34 (discovery stayed "until the discovery conference is held."). Plaintiff's outstanding discovery, to date, consists of only ten requests for production, nine interrogatories, and a request to provide dates for one deposition. The parties have not even conferred on these limited requests, and Meta makes no showing that they are not proportional to the needs of the DMV case.

Indeed, because Meta has failed to meaningfully meet and confer with Plaintiff about the lengthy proposal it makes above, its request that the Court adopt that proposal for the DMV case on April 20 is premature. Plaintiff only learned two days before this joint filing that Meta planned to make a proposal so significantly exceeding the four issues this Court identified as matters to be addressed on April 20. *See* Dkt. No. 35. Meta first shared its written proposal on April 12. Plaintiff therefore reserves all rights and respectfully requests that he be granted the opportunity to raise additional points concerning the proposal and any potential for coordination that would be reasonable in the DMV case at the April 20 hearing, or later should the Court address these issues at a later time.

1   Dated: April 13, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By:   _/s/ Lauren Goldman_
          Lauren Goldman

LAUREN R. GOLDMAN (admitted _pro hac vice_)
DARCY C. HARRIS (admitted _pro hac vice_)
lgoldman@gibsondunn.com
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
ABIGAIL A. BARRERA, SBN 301746
emccloskey@gibsondunn.com
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306

**COOLEY LLP**

By:   _/s/ Michael G. Rhodes_
          Michael G. Rhodes

MICHAEL G. RHODES, SBN 116127
KYLE C. WONG, SBN 224021
CAROLINE A. LEBEL, SBN 340067
rhodesmg@cooley.com
kwong@cooley.com
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:  (415) 693-2222

_Attorneys for Meta Platforms, Inc._

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**

By:   _/s/ Michael W. Sobol_____
        Michael W. Sobol

MICHAEL W. SOBOL, SBN 194857
DAVID T. RUDOLPH, SBN 233457
MELISSA GARDNER, SBN 289096
JACOB H. POLIN, SBN 311203
NABILA ABDALLAH, SBN 347764
msobol@lchb.com
drudolph@lchb.com
mgardner@lchb.com
jpolin@lchb.com
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008


**CARNEY BATES & PULLIAM, PLLC**

By:   _/s/ Joseph Henry Bates, III_____
        Joseph Henry Bates, III

JOSEPH HENRY BATES, III, SBN 167688
ALLEN CARNEY (admitted *pro hac vice*)
COURTNEY E. ROSS (admitted *pro hac vice*)
hbates@cbplaw.com
acarney@cbplaw.com
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff and the Proposed Class*

1

## <u>CIVIL L.R. 5-1(h)(3) ATTESTATION</u>

2

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren Goldman, hereby attest under penalty of

3

perjury that concurrence in the filing of this document has been obtained from all signatories.

4

5

6

Dated: April 13, 2023                          By:      _/s/ Lauren Goldman_____

7

Lauren Goldman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28