# EXHIBIT 1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | NORTHERN DISTRICT OF CALIFORNIA |
| 3 | SAN FRANCISCO DIVISION |

MIKHAIL GERSHZON, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

META PLATFORMS, INC.,

    Defendant.

Case No. 3:23-cv-00083-SI

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Action Filed: January 6, 2023

Honorable Judge Susan Illston

**1.     PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") ("eDiscovery") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.     COOPERATION**

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's guidelines for the discovery of ESI.

**3.     DEFINITIONS**

(a)     **"Electronically stored information"** or **"ESI,"** as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

(b)     **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

(c)     **"Non-Party"** means any natural person, partnership, corporation, association, or other legal entity who is not a Party (as defined below) in this action.

(d)     **"Party"** means any party to this action, including all of its officers, directors, and employees.

(e)     **"Producing Party"** means a Party or Non-Party that produces ESI in this action.

(f)     **"Receiving Party"** means a Party that receives ESI from a Producing Party in this action.

**4.     LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.      PRESERVATION**

ESI created or received after June 15, 2010 will be preserved.

The Parties are obligated to identify, locate, maintain and preserve evidence that they know or reasonably should know is relevant to any claim or defense in the action. "[A]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Rockman Co. (USA), Inc. v. Nong Shim Co.*, Ltd, 229 F. Supp. 3d 1109, 1122 (N.D. Cal. 2017) (Orrick, J.) (quoting *In re Napster*, 462 F. Supp. 2d 1060, 1067).

If a Party seeks to be relieved of the obligation to preserve certain relevant evidence, it may file a motion for a protective order seeking to be relieved of that obligation for specific relevant evidence. The Party that seeks the protective order shall bear the burden of demonstrating good cause and a particular need for a protective order to not preserve relevant evidence. *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 415 (S.D. Cal. Sept. 17, 2018); Manual for Complex Litigation § 11.442 ("[T]he party seeking destruction should be required to show good cause before destruction is permitted.")

Before filing a motion for a protective order to be relieved of the obligation to preserve certain relevant evidence, the Party seeking that relief shall provide a precise description to the other Party of the relevant evidence that the Party seeks not to preserve, including identifying (1) the sources of data for that relevant evidence; (2) how the sources of that relevant data may be searched, extracted, or preserved; (3) whether alternatives to the preservation of the relevant data from the identified source exist and, if so, how those alternatives can be utilized by the Parties; (4) specific information regarding costs and burdens of preservation, (5) the Party's asserted good cause and particular need to stop preserving the evidence, and (6) whether the Party will stipulate that the elements of the other Parties' claims or defense (or prerquisties to class certification under Federal Rule of Civil Procedure 23(a) or (b)) that would rely, in whole or in part, on the evidence that it seeks to stop preserving are automatically established, and to stipulate that it waives any claims or defenses (including defenses to class certification) that rely in whole or in part on the absence of the evidence that it seeks to stop preserving.

1   The other Party retains all rights to oppose the motion for a protective order. Nothing in
2   this Protocol shall be construed to permit a Party to destroy or fail to retain any materials relevant
3   to any complaint filed in this matter, including event level data.

4   **6.    SEARCH**

5   The Parties recognize that there exist a variety of search tools and methodologies,
6   including but not limited to the use of search terms and technology assisted review ("TAR")
7   tools. The Parties agree to meet and confer over the use of search tools and methodologies,
8   including the use of search terms and TAR, before any particular tool or methodology is applied.
9   Neither Party will utilize technology-assisted review to filter out their potentially responsive ESI
10  without agreement of the other Party or a Court order.

11  Where potentially responsive ESI shall be searched using search terms, the Parties agree
12  to propose search terms and custodians that they intend to employ to search for relevant and
13  responsive documents. In the first instance, the producing Party will propose initial search terms,
14  custodians, and sources of ESI for custodial searches for the consideration of the Receiving Party.
15  Proposed search term, custodians, sources of ESI for custodial searches will be subject to
16  negotiation and input from the Receiving Party. The Receiving Party may ask for (and the
17  Producing Party will not unreasonably withhold) qualitative and quantitative information
18  regarding search methodology, including but not limited to, production of hit reports (to include
19  unique hits and hits with families), and associated testing and validation to be conducted after the
20  methodology is implemented. If the Parties are unable to reach agreement on initial search terms,
21  custodians and sources of ESI, they shall present their dispute to the Court in accordance with its
22  Standing Order.

23  After an agreement or Court order regarding the initial search terms and custodians,
24  Parties may request additional search terms or custodians. Such requests must be made in good
25  faith. Disputes over additional search terms or custodians may, after a meet and confer, be
26  presented to the Court.

27  Agreement on a search methodology does not relieve a Party of its obligation under the
28  Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and

responsive documents of which a Party is aware or should be aware with exercise of diligent investigation, regardless of whether they contain search terms or are retrieved by some other search methodology agreed to by the Parties or ordered by the Court.

Searches of custodial databases using search terms do not relieve a Party of the obligation to (a) search non-custodial databases and (b) collect documents without using search terms. The Parties will work cooperatively to identify the requests for production that have responsive documents that can and should be collected from non-custodial repositories. The Parties will work cooperatively to identify the requests that have responsive documents that can and should be collected without using search terms. The Parties will cooperate in the exchange of information concerning non-custodial databases that are likely to contain responsive information to facilitate discussions regarding what data will be produced from those databases. Dispute over searches of non-custodial databases or collection of documents without search terms may, after a meet and confer, be presented to the Court.

The Producing Party may not redact portions of documents for relevancy without the agreement of the Receiving Party.

### 7.     DE-DUPLICATION

Each Producing Party is required to produce only a single copy of a responsive document and each Producing Party may de-duplicate responsive ESI (e.g., based on MD5 hash values at the document level) across custodians, provided that metadata is produced indicating all of the Custodians with whom a copy of the responsive document was associated.  For emails with attachments, the hash value is generated based on the parent/child document grouping.  To the extent that de-duplication through MD5 hash values is not possible, the Parties shall meet and confer to discuss any other proposed method of de-duplication.

### 8.     PRODUCTION FORMATS

Appendix A sets forth technical specifications that govern the form of production of documents in this litigation.   If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.

The Parties agree not to degrade the searchability of documents as part of the document production process. The Parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

To the extent any data, ESI, or documents requested in discovery are not reasonably usable absent translation by the Producing Party or its systems, the Parties shall meet-and-confer regarding translation by the Producing Party into a reasonably usable form and the production of legends or keys employed to translate the data.

**9.     DOCUMENTS PROTECTED FROM DISCOVERY**

(a)     Communications involving trial counsel of record that post-date the filing of the complaint need not be placed on a privilege log.

(b)     The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.  Privilege logs will be produced in Microsoft Excel.

(c)     The Parties will produce privilege logs at the earliest practicable time after the document would have otherwise been produced. In addition, privilege log productions must be current, reflecting all documents that have been withheld pursuant to a privilege claim, no later than 60 days before Plaintiffs' motion for class certification is to be filed and must again be brought current no later than 60 days before the close of fact discovery.

**10.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

1 | **IT IS SO STIPULATED**, through Counsel of Record.

2 | Dated: _____

*Attorneys for Plaintiff*

**LIEFF CABRASER HEIMAN & BERNSTEIN LLP**
Michael W. Sobol, SBN 194857
David T. Rudolph, SBN 233457
Melissa Gardner, SBN 289096
Jacob H. Polin, SBN 311203
Nabila Abdallah, SBN 347764
msobol@lchb.com
drudolph@lchb.com
mgardner@lchb.com
jpolin@lchb.com
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008


**CARNEY BATES & PULLIAM, PLLC**
Joseph Henry Bates, III, SBN 167688
Allen Carney (admitted *pro hac vice*)
Courtney E. Ross (admitted *pro hac vice*)
hbates@cbplaw.com
acarney@cbplaw.com
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505


*Attorneys for Defendant Meta Platforms, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (pro hac vice)
lgoldman@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com

- 6 -  STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 3:23-cv-00083-SI

|   |   |
|---|---|
| 1 | ABIGAIL A. BARRERA (SBN 301746) |
| 2 | abarrera@gibsondunn.com |
|   | 555 Mission Street, Suite 3000 |
| 3 | San Francisco, CA 94105 |
|   | Telephone:    (415) 393-8200 |
| 4 | Facsimile:    (415) 393-8306 |

1  ABIGAIL A. BARRERA (SBN 301746)
   abarrera@gibsondunn.com
2  555 Mission Street, Suite 3000
3  San Francisco, CA 94105
   Telephone:    (415) 393-8200
4  Facsimile:    (415) 393-8306

5  TRENTON J. VAN OSS (pro hac vice)
   tvanoss@gibsondunn.com
6  1050 Connecticut Avenue, N.W.
7  Washington, DC 20036-5306
   Telephone:    (202) 955-8500
8  Facsimile:    (202) 467-0539

9  **COOLEY LLP**
   MICHAEL G. RHODES (SBN 116127)
10 rhodesmg@cooley.com
   KYLE C. WONG (SBN 224021)
11 kwong@cooley.com
12 CAMERON J. CLARK (SBN 313039)
   cclark@cooley.com
13 CAROLINE A. LEBEL (SBN 340067)
   clebel@cooley.com
14 3 Embarcadero Center, 20th Floor
15 San Francisco, CA 94111-4004
   Telephone: (415) 693-2000

16

17

18
   **IT IS ORDERED** that the forgoing Agreement is approved.
19

20
   Dated:
21

22
   _____
23                   UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

- 7 - STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
Case No. 3:23-cv-00083-SI

**APPENDIX 1: PRODUCTION FORMAT**

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

    a. an ASCII (or UTF8) delimited data file (.DAT) using standard delimiters;

    b. an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity) that shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

    c. 1-bit TIFF images;

    d. native files; and

    e. document level .TXT files for all documents containing extracted full text or OCR text.

In addition:

    a. Parent-child relationships will be maintained in production. Parent-child relationships include association between an attachment and its parent document, or, where technologically feasible, between embedded documents and their parent, or between a document with document stubs or links to internal or non-public documents and those stubbed out documents or internal or non-public documents so linked.

A document and all other documents in its attachment range, emails with attachments, files with extracted embedded files or OLE documents, and email or other documents together with any documents referenced by document stubs or via links to internal or non-public document sources within those emails or other documents, all constitute family groups. If any member of a family group is produced, all members of that group must also be produced if it is technologically feasible to do so or else logged as privileged, and no such member shall be withheld from production as a duplicate. In case of technological infeasibility, the Producing Party agrees to make reasonable efforts to ensure that the locations likely to contain members of family groups that are not produced are searched for responsive materials and, upon request, to promptly

1    produce documents for which it was unable to maintain a parent-child relationship and which
2    were not produced as described in this section.

3           b.      If a particular document warrants a different production format, the Parties
4    will cooperate in good faith to arrange for a mutually acceptable production format.

6    2.      **Production Media and Access Controls.**  Documents shall be encrypted and
7    produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD,
8    DVD, flash drive or external hard drive ("Production Media").  Each piece of Production Media
9    shall identify a production number corresponding to the production volume (*e.g.* "VOL001").
10   Each piece of Production Media shall also identify: (a) the case caption; (b) the following label:
11   "This media contains material subject to Court Ordered security measures"; (c) the Producing
12   Party's name; (d) the production date; and (e) the Bates Number range of the materials contained
13   on the Production Media.

14          Nothing in this Order will preclude or impair any and all protections provided to any Party
15   or Non-Party by any Protective Order(s) agreed and entered into by the Parties.  Any data
16   produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt
17   of such data.  Parties will use best efforts to avoid the unnecessary copying or transmittal of
18   produced documents.  Any copies made of produced data must be kept on media or hardware
19   employing whole-disk or folder level encryption or otherwise secured on information systems and
20   networks in a manner consistent with the best practices for data protection.  If questions arise,
21   Parties will meet and confer to ensure security concerns are addressed prior to the exchange of
22   any documents.

23   3.      **Data Load Files/Image Load Files.**  Each TIFF in a production must be
24   referenced in the corresponding image load file.  The total number of documents referenced in a
25   production's data load file should match the total number of designated document breaks in the
26   image load file(s) in the production.  The total number of pages referenced in a production's
27   image load file should match the total number of TIFF files in the production.  All images must
28   be assigned a unique Bates number that is sequential within a given document and across the

1  production sets.  The Bates Numbers in the image load file must match the corresponding

2  documents' beginning Bates numbers in the data load file.  The total number of documents in a

3  production should match the total number of records in the data load file.  Load files shall not

4  vary in format or structure within a production, or from one production to another.

5          4. **Metadata Fields and Metadata File[1].**  Each of the metadata and coding fields set

6  forth below that can be extracted shall be produced for each document.  A Producing Party is not

7  obligated to populate or edit manually any of the fields below if such fields cannot be extracted

8  from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES,

9  (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALLCUSTODIAN(S),

10  (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH,

11  and (k) HASHVALUE, which should be populated by the Producing Party or the Producing

12  Party's vendor.  The Producing Parties will make reasonable efforts to ensure that metadata fields

13  automatically extracted from the documents correspond directly to the information that exists in

14  the original documents.  The metadata shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter = ; (ASCII Code 059)

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a |

---

[1] The Parties reserve the right to request that additional metadata fields are added as discovery progresses.

| Field Name | Field Description |
|---|---|
|  | family |
| PRODVOL | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| ATTACHNAME | The file name(s) of the attachment(s) to a parent document(s). Separated by a semicolon. |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| FILENAME | Original file name |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| EMAIL SUBJECT | Subject line of email pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |

| Field Name | Field Description |
| --- | --- |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM SS) |
| REDACTIONS | Indicate Yes/No if document is redacted |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PAGE COUNT | The number of pages of the Document, excluding the pages of documents in the same family |

5.   **Processing.**  With the exception of time zone modification (discussed below), ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

a.   Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the document.  ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a Producing Party, that time zone shall be Pacific Standard Time (PST), and shall be consistent across each Producing Party's productions.  Such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

b.   Hidden Content.  ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document.  The Producing Party will identify and disclose any instances when it was not feasible

to display all data visible in the native application. For presentations with hidden slides or speaker notes that are not produced in native format, Producing Parties shall take reasonable efforts to show both the slide and speakers' notes for that slide on a single TIFF image.

      c.    TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, with at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the respective page of a document. Each image shall be branded with the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). All images will display all data visible in its native application. Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher-quality TIFF image or the native or original file. TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

6. **Email Families.** Parent-child relationships (or "families") that have been maintained in the ordinary course of business must be preserved.

7. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Hard copy documents shall be produced with an accompanying metadata load file as forth above in Appendix 1, Paragraph 4, with the exception of NATIVEFILEPATH and HASHVALUE which would not exist for hard copy documents.

      a.    <u>Unitization of Paper Documents</u>: Paper documents, to the extent collected and/or produced, should be logically unitized for production. Therefore, when scanning paper documents for production, documents should be scanned as they are kept in the regular course of business including maintaining any groupings, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. Producing Parties will make reasonable efforts to unitize documents as they are kept in the regular course of business.

1                    b.    File/Binder Structures (Parent-Child Unitization):  Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized as described in subsection (a) above, but maintained together in a parent-child relationship as specified in paragraph 1(a).  The parties will make their best efforts to unitize parent-child groups correctly.

                     c.    Identification: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

8.    **Color.**  Native documents will be produced in color.  For non-native documents, the parties may request color copies of a reasonable number of documents where color will aid in the interpretation of the document, provided that such request is made in good faith and does not impose an undue burden on the Producing Party.

9.    **Text Files.**  A single multi-page text file shall be provided for each document, and the filename should match its respective BEGBATES filename. When possible, the text of native files should be extracted directly from the native file.  Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

10.   **Native files.**

                     a.    All spreadsheet (e.g., Microsoft Excel) files shall be produced as native files with TIFF placeholder images.  Spreadsheet files requiring redaction, including Microsoft Excel files, will be redacted within the native file, and the redacted native file will be produced as provided herein.

                     b.    All presentation (e.g. Microsoft PowerPoint) files shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs.  All media files, such as audio and

1  video files and digital photographs, shall be produced as native files with TIFF placeholder
2  images.
3           c.      To the extent other types of documents are produced in this litigation, the
4  parties will meet-and-confer regarding whether production of those documents in native format is
5  feasible and appropriate.
6           d.      Native files will be produced with a link in the NATIVEFILEPATH field,
7  along with extracted text (where extracted text is available) and applicable metadata fields set
8  forth in paragraph 4 above.  A Bates numbered TIFF placeholder indicating that the document
9  was provided in native format must accompany every native file.
10      11.     **Confidentiality Designation.**  Documents produced in TIFF format will be
11 stamped with the appropriate confidentiality designations in accordance with the Protective Order
12 entered in this matter.  Each document produced in native format will have its confidentiality
13 designation identified in the filename of the native file and indicated on its corresponding TIFF
14 placeholder.
15      12.     **Databases and Other Structured Data.**
16          a.      The Parties agree to meet and confer regarding the production format for
17 data contained in databases or other structured data types, to ensure that any information
18 produced is reasonably usable by the Receiving Party and that its productions does not impose an
19 undue burden on the Producing Party.
20          b.      To the extent a Producing Party is constrained from producing responsive
21 ESI because of a third-party license or because software necessary to view the ESI is hardware-
22 dependent, the Parties shall meet and confer to reach an agreement on alternative methods to
23 enable the Receiving Party to view the ESI.
24      13.     **Proprietary Files.**  To the extent a response to discovery requires production of
25 ESI accessible only through proprietary software, the parties should continue to preserve each
26 version of such information.  The parties shall meet and confer to finalize the appropriate
27 production format.
28

|  |  |
|---|---|
| 1 | 14. **Manner of Production.** All productions must be made by secure file transfer to |

14. **Manner of Production.** All productions must be made by secure file transfer to agreed-upon email addresses. In the event the Producing Party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the Receiving Party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each production shall be accompanied by a cover letter that identifies: (1) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.