GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-4622
Facsimile:    (415) 801-7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone:    (213) 229-7311
Facsimile:    (213) 229-6311

*Attorneys for Defendant Meta Platforms, Inc.*

*Additional Attorneys in Signature Block*

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
MICHAEL W. SOBOL, SBN 194857
msobol@lchb.com
DAVID T. RUDOLPH, SBN 233457
drudolph@lchb.com
MELISSA GARDNER, SBN 289096
mgardner@lchb.com
JACOB H. POLIN, SBN 311203
jpolin@lchb.com
NABILA ABDALLAH, SBN 347764
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

CARNEY BATES & PULLIAM, PLLC
JOSEPH HENRY BATES, III, SBN 167688
hbates@cbplaw.com
ALLEN CARNEY (admitted *pro hac vice*)
acarney@cbplaw.com
COURTNEY E. ROSS (admitted *pro hac vice*)
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKHAIL GERSHZON, individually and on behalf of others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC.<br><br>　　　　　　　Defendant. | Case No. 3:23-cv-00083-SI-VKD<br><br>**JOINT STATEMENT**<br><br>Date: May 23, 2023<br>Time: 1:30 p.m.<br>Courtroom: 2, 5th Floor<br>Judge: Hon. Virginia K. DeMarchi |

Gibson, Dunn &
Crutcher LLP

2797759.1

In accordance with the Court's direction at the April 20, 2023 Discovery Conference, *see* Dkt. 43, the parties in *Gershzon v. Meta*, Case No. 3:23-cv-00083-SI (VKD), *In re Meta Pixel Tax Filing Cases*, Case No. 3:22-cv-07557-SI (VKD), and *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (VKD), have continued to meet and confer regarding "(1) whether and to what extent aspects of discovery should be coordinated; and (2) whether any interim discovery deadlines [] should be set . . . ." *See* Dkt. 43.

The parties to the above-captioned matter submit this Joint Statement in advance of the May 23, 2023 discovery conference.

## I.       COORDINATED DISCOVERY

*Plaintiffs' Statement:*

On April 20, 2023, the Court instructed the parties "to reflect on the discovery needs that are common to the three sets of cases," considering in particular whether "some of Meta's document production can just be shared," how to prevent the same Meta witness from having to testify on three different occasions to the same material, and how to facilitate efficiency for the Court by allowing the perspective of all counsel interested in a particular issue ("if it really is the same across all cases"), to be heard at the same time.  Apr. 20 Hearing Tr. at 7-9.

Plaintiff's counsel makes the proposal attached as Exhibit A in response to the Court's instruction.  In reflecting on the concerns identified by the Court, Plaintiff's counsel has conferred with counsel in the Healthcare and Tax cases regarding the discovery needs in those cases as compared to the needs in the DMV case, as well as about their views on Meta's coordination proposals.  Plaintiff's counsel reviewed the Complaints in the Healthcare and Tax actions, Meta's pending motions to dismiss in the DMV and Healthcare cases, the parties' various status reports, pending discovery dispute statements, and the discovery served to date in each case.  Plaintiff's counsel asked Meta questions about the types of discovery it believes would require duplicative efforts, and also reviewed publicly-available information from other litigation about Meta's data systems in an attempt to understand Meta's processes for locating information responsive to particular kinds of requests.

On May 15, Meta largely repeated the proposal it made on April 13, to require that Plaintiff's counsel identify "global" requests in the Healthcare discovery and to accept in response that portion

-2-

2797759.1

Meta deems relevant to the DMV case, then serve unified requests for further "global" discovery, and jointly conduct all depositions of overlapping witnesses.  Meta clarified that it does not intend to prevent all case-specific discovery from proceeding now, but rather would allow discovery that Plaintiff can establish is not "global," as Meta understands the term.  After 4pm PT on May 16, Meta made the proposal below.  Plaintiff appreciates Meta's last-minute effort to compromise on part of its proposal, but for the reasons set forth herein, Plaintiff believes that his proposal, and not Meta's, reasonably accommodates concerns about avoidable duplication without introducing unnecessary burdens on any party, and will facilitate efficiency as discovery proceeds. The problems with Meta's request that this Court effectively unify discovery in three distinct cases extend far beyond the many issues with its earlier plan to prioritize the Healthcare discovery.

In Section A of this statement, Plaintiff identifies three material considerations supporting his proposal for fewer restrictions on case-specific discovery, and in Section B discusses those concerns in the context of specific discovery requests that appear to "overlap" among the cases, and the types of unfruitful disputes that Meta's proposals already have created.  In addition, in Section B-2 below, Plaintiff discusses the testimony of Meta engineers in these and other cases showing the critical importance of understanding how and where Meta would search for responsive information for each request, and of involving counsel who served a particular request in that process from the outset. Plaintiff's proposal to avoid duplicative depositions is discussed in Section C, and a proposal to reduce disputes before the Court is addressed in Section D.  Plaintiff discusses interim deadlines in the following section.

**A.  Coordination will work and create efficiencies, provided the parties have adequate information and Plaintiffs have reasonable opportunity to pursue discovery specific to their case.**

Plaintiff agrees with the Court that certain aspects of discovery can be coordinated to create efficiencies across the Healthcare, Tax, and DMV cases.  Plaintiff disagrees with Meta's proposal that efficiency should require uniting discovery requests in two or more cases and litigating whether requests are "global" before Meta is obligated to comply with its discovery obligations.  Safeguards are required to ensure that efforts to increase efficiency do not prejudice the parties in these cases. Plaintiff offers a proposal for coordination that defers imposing potentially prejudicial requirements

2797759.1

until all counsel are better informed about the scope of specific requests and how Meta will find responsive materials (while still permitting the parties to negotiate agreements sooner if warranted for particular requests), in consideration of the following factors:

*First*, the parties and the Court, today, have limited insight into how Meta organizes and stores the many varied categories of data Meta obtains depending on the substance and nature of the different websites at issue in the several cases subject to the anticipated coordination of discovery. Understanding how Meta would actually search for responsive information is critical to assessing whether discovery requests—even those that appear to overlap or to implicate similar search methodologies—would, in fact, require Meta to duplicate efforts if addressed independently for each case. During the parties' meet and confer on these issues on May 15, Meta's counsel explained that they conceive of "global" requests as those that either "overlap" textually **or** (given that the vast majority of requests seek information pertaining to the websites at issue in the respective cases) that **could** implicate the same search methodology by Meta, suggesting for example, it would be more efficient to "pull" data about named Plaintiffs once for all cases rather than separately for each case. The discussion to date has been purely theoretical. At this early stage of discovery, even Meta's outside counsel has only a half-formed understanding of which requests could be "global" in terms of requiring the same efforts by Meta to locate responsive information. As discussed in more detail below, the determination of any **meaningful** overlap—whether requests in the DMV case would require actual, undue, duplication of effort by Meta if made in another case—cannot be made by reducing discovery to abstractions or just considering the text of requests. Nonetheless, Meta's proposal would require Plaintiff's counsel to do exactly that for any further requests for production, allowing Meta to delay the progress of **both** "global" and case-specific discovery with sideshows about whether textual overlap, or its counsel's impression that Meta might locate responsive information in similar ways, means a request is "global."

*Second*, requiring Plaintiffs' counsel in multiple cases to jointly serve and jointly negotiate requests risks prejudicing the classes they represent—by creating unnecessary delays if not also by circumscribing discovery. Productions for a litigation are typically tailored to the unique facts of the case, and represent the product of negotiation specific to that litigation. Plaintiff's counsel in the

Healthcare and Tax cases owes no duty to ensure the discovery they take is adequate to support Plaintiff's different claims for a different putative class. Two requests that might appear duplicative when they are initially served (and thus would be subject to Meta's requirement to be joint) may, after limitations on scope and search methodology are negotiated, turn out to seek, and return, completely different information. Volumes of responsive information in a large and complex case like the Healthcare case, which necessarily requires time to compile and produce, will be irrelevant to Plaintiff's smaller, less complex action. These factors are particularly relevant because the DMV Plaintiff advances unique statutory claims not asserted in the other cases, which arise from transmissions from a website not at issue in other cases, on behalf of a much smaller class than the other cases. Proving the elements of Plaintiff's Driver's Privacy Protection Act ("DPPA") claim, and rebutting Meta's asserted statutory defenses, may require counsel to prioritize distinct evidence from what is central in other cases (Healthcare and Tax counsel, in turn, could reasonably ignore evidence that is only material to proving or defeating statutory defenses to a DPPA claim). Even if joint negotiations involving all perspectives could be more efficient than negotiations with individual counsel, which is doubtful, Meta can assert there are efficiencies to *producing* documents responsive to a "joint" request together, even if the more limited materials sought in the DMV case could have been produced much sooner.

*Third,* because Meta is present in all the cases, and it is represented by the same counsel in all cases, effective coordination should be achieved by putting the initial burden on Meta to coordinate and limit duplication. For example, if three requests actually seek the same information, counsel can ask Meta engineers questions pertinent to all three cases in one interview, rather than three. Meta can reduce the number of employee interviews even for requests that do not overlap in substance, if the same Meta employees have the information sought in each case. Similarly, Meta is already positioned to account for discovery requests, claims, and defenses in all three cases when identifying sources and custodians for ESI review, as well as later on when Meta reviews materials for responsiveness. If Meta identifies a relevant source of responsive data for all three cases, it can go ahead and pull data for all of them whether or not requests are designated "global." Negotiating those issues with each Plaintiffs' counsel from the outset will be more efficient than attempting to negotiate them with partially

2797759.1

1  disinterested counsel, together.  In those instances where relevant, responsive materials are the same,

2  applying three sets of Bates stamps to those materials is not burden.

3  Moreover, given evidence available at this stage, discussed further below, that Meta will need

4  to search different repositories of information, and interview different Meta employees for the evidence

5  of greatest relevance in each case (even where requests superficially seek similar information), there is

6  good reason to believe that case-specific searches will be the *most* efficient means for Meta to respond

7  to its outstanding discovery obligations, particularly in the relatively narrow DMV case.

8  **B.    Some of Meta's document production can be shared, but it must be without
prejudice to seeking case-specific, complementary, or arguably "overlapping"
9         discovery.**

10  Under Plaintiff's proposal, Meta will be required to comply with its current, outstanding

11  discovery obligations in the DMV case, consistent with Judge Illston's instruction.  *See* Dkt. 53.  In the

12  short term, this will mean serving Meta's objections to Plaintiff's outstanding discovery on or before

13  May 19 (Meta implicitly requests an extension to May 22 in its statement below, which Plaintiff is

14  willing to grant), and then conferring with counsel in the DMV case regarding Meta's objections,

15  including any as to undue burden or duplication.  Through that process, as well as the information-

16  sharing conference on preservation later this week, the parties should be able to make progress on

17  identifying specific DMV requests that seek the same information, or would entail the same search

18  processes, as those in other cases.  Plaintiff is amenable to accommodating reasonable compromises as

19  to timing and scope if it is clear that a particular request seeks information that Meta is in the process

20  of producing for another case, so long as the accommodation would not be prejudicial in the DMV

21  case.

22  Addressing potential duplication through the meet and confer process is nothing new.  Parties

23  can always compromise on a request for information by agreeing to the production of "cloned" or

24  "piggyback" discovery.  *See* generally, *e.g.*, Timing—Expedited Discovery (Case Summary,

25  *Wilmington Tr. Co. v. Boeing Co.* (W.D. Wash. 2020), 35 No. 10 Fed. Litigator NL 10 ("In general,

26  the courts seem receptive to the concept of cloned discovery but require substantial similarity between

27  the claims before they will deem cloned discovery appropriate.")  Documents produced in the

28  Healthcare or Tax case may turn out to be an adequate substitute for DMV case-specific search and

-6-

review, or it may turn out that compromises reasonably entered by other parties (such as limitations on scope or search methodology) excluded materials needed for this case.  As Meta now appears to understand, that determination cannot be made in a vacuum before the potentially duplicative production even exists.

### 1.   Litigating which requests are "global" would serve no purpose but delay.

Meta's proposal to identify "global" discovery and then address it jointly with counsel in other cases will waste far more time than it could save.  Plaintiff tried in earnest to engage with Meta's similar past proposals, attempting to identify "global" requests as between the 10 Requests for Production and 9 Interrogatories Plaintiff served on April 6; 12 Requests for Production (served January 31) in the Tax case; and 67 Requests for Production and 5 Interrogatories (served February 9) in the Healthcare case. Each case's requests focus on the third-party websites at issue in those cases and the data Meta receives from those websites; "overlap" would be generally process-based, *i.e.*, it would exist only if Meta actually searches the same repositories for responsive information *and* if the product (and scope) of that search would be the same across cases.  Plaintiff attempted to ask Meta questions arising from this review on May 12 (*e.g.*, would source code produced in the Healthcare case all be the same as responsive source code in the DMV case?); Meta's counsel believed so, but could only guess.  On the basis of such guesswork, Meta would almost certainly argue that source code requests are "global," and continue to ignore whether there *is* variation in the code relevant to each case until some date far in the future, if ever.  This would naturally generate disputes that would have to be resolved (if at all) in the abstract, until Meta performs the necessary case-specific work of identifying, and negotiating, what is relevant and responsive to particular discovery sought in each case (and how it could be found).

To illustrate the types of unhelpful disputes Meta's proposal is already generating, Meta recently took the position before Judge Illston that Plaintiff's Requests for Production pertaining specifically to Plaintiff and the California DMV (*e.g.*, agreements between Meta and the DMV, Plaintiff-specific documents identified in Meta's initial disclosures), and the three Interrogatories below "include the types of requests which Meta has proposed should be coordinated across the cases." Dkt. 46.

Interrogatory 1: "Identify, by number such as "527056364702737" and the date range(s) of installation, each Meta Pixel installed at any time **on the California Department of Motor Vehicles website**";

Interrogatory 7: "**For each Meta Pixel identified in response to Interrogatory No. 1**, identify by category and the date range(s) in which it was received, all data that You have received via the Meta Pixel **from the California Department of Motor Vehicles website**.";

Interrogatory 9: Describe Your data retention policies applicable to the contents of transmissions by any Meta Pixel **identified in response to Interrogatory No. 1**, Including any changes to such policies implemented between the first and last **dates specified in response to Interrogatory No. 1**.

*See* Dkt. 50.  So far, Plaintiff has only served limited initial discovery, anticipating that Meta's responses to that will enable Plaintiff to serve efficient, targeted, requests going forward.  Meta's new proposal would require Plaintiff to litigate whether each of his additional requests are "global," presumably *after* the default 30-day time period set in the Federal Rules, before Meta has to respond.

With respect to Meta's position on "coordinating" Plaintiff's case-specific discovery above, Plaintiff assumes that the basis for Meta's position was that some information about data categories and retention policies (DMV Interrogatory 9) will derive from the same sources Meta might search to find information responsive to the Healthcare Plaintiffs' Request for Production 36, which seeks "[d]ocuments sufficient to show Meta's policies Regarding collection and storage of Facebook Users' data Meta receives through the Meta Pixel, Including privacy policies, retention policies and other documents that describe who is involved in collection and storage and where, how and when the data collected and stored."  Plaintiff agrees that background information on Meta's policies in general (assuming Meta responds in full to the Healthcare request and no case-specific limits are negotiated or prioritized) could be useable in the DMV case, but that discovery would only begin to answer the question posed (*i.e.*, **which** policies applied to the DMV data), and then only if all of the DMV data is stored and retained in exactly the same way as any other Meta Pixel data.  As discussed further below, evidence from other litigation suggests that is unlikely. Under Meta's proposal, these kinds of disputes having nothing to do with the merits would have to resolve before discovery can proceed.

Many such disputes would be raised.  This is because at the highest level of abstraction, counsel in the Healthcare, Tax, and DMV cases all seek information from Meta about what is transmitted via

-8-

2797759.1

the Meta Pixel, and how Meta uses that data.  This leaves Meta significant room to craft meritless, but superficially plausible, arguments about efficiency which the parties and Court will have to spend time addressing.  Like the policy information discussed above, background discovery about the history, default configurations, and general **possible** uses of Pixel data may be useable across cases (and Plaintiff is amenable to compromises regarding the production of such information).  However, no rationale for requiring more from Plaintiffs' counsel now than a reasonable approach to case-specific negotiations withstands scrutiny.  Meta can easily produce the same background information in all three cases, whether it receives three requests covering the same documents and information, or one.

It is the different information sought by superficially overlapping requests which Plaintiff must preserve his ability to discover, without artificial delays engendered by disputes about "overlap." Answers to the **ultimate** questions will require more than background information, which Meta will have to locate from case-specific sources using methodologies that are appropriate to the claims and defenses, and burden, for the DMV case.

### 2. Meta's coordination proposal makes assumptions about common repositories of information that contradict Meta's averments on the merits and other evidence on how Meta stores highly relevant information.

Meta's proposal assumes away critical distinctions between the central needs of each case, creating a process all but guaranteed to delay discovery.  In connection with its coordination proposals, Meta has emphasized that the "same Meta technology is involved" in all three cases.  *See e.g.*, Dkt. 38 at 16.  Yet in court filings about the technology, Meta says the technology operates in varied ways. Meta has repeatedly averred that "what" the Meta Pixel transmits depends on the website where a Meta Pixel is installed.  *See Healthcare* Motion to Dismiss, Dkt. 232 at 1, 2, 6 ("[I]t is ultimately the developer, not Meta, that controls the code on its own website and chooses what information to send."); *DMV* Motion to Dismiss, Dkt. 31 at 1, 2, 15 ("[d]evelopers like the DMV are the ones who decide . . . what data to share with Meta.").  If discovery bears out the assertions in Meta's merits briefing, even the abstracted question "what does the Pixel transmit" will require case specific inquiries from the outset, either into the configuration each Pixel on each non-party website, or more readily and appropriately, into the data Meta actually received from the website(s) at issue in a particular case.

The scope, substance, and proportionality of Meta's search for that data will vary by case.

-9-

2797759.1

1    Meta's years-long negotiations over named plaintiff data in *In re Facebook, Inc. Consumer Priv. User*

2    *Profile Litig.*, No. 3:18-MD-02843-VC-JSC (N.D. Cal.) confirms this.  Unsealed transcripts from that

3    case reveal that Meta has no over-arching structure for user data.  Locating the actual transmissions

4    from a particular website, or about a particular person, will require Meta to identify which "teams" at

5    Meta access the data, where **that** team stores the data, how it is arranged, and how it can be searched.

6         The importance of case-specific negotiations from the start cannot be overstated.  After **years**

7    of relatively fruitless discussions about named Plaintiff data in *Facebook Consumer Privacy*, Meta

8    engineers testified to Special Master Garrie, in February 2022, as follows: Data transmitted by the Pixel

9    is "certainly received" by Meta, but storage is not centralized. Dkt. 982, Exhibit L (page 330 of 833)

10   Feb. 17, 2022 Hearing Tr. at 72.  For any particular data at issue, "[i]t would take multiple teams on

11   the ad side to track down exactly the – where the data flows."  *Id.* at 77.  This is because Meta "tend[s]

12   to build pieces of infrastructure that are generic [] -- whenever possible. And then just leave them

13   running for anybody at the company to use."  *Id.* at 77-78.  Any "team" at Meta that decides it would

14   benefit from using that system, "they're typically free to make use of it. And so even the teams who

15   maintain and are responsible for these systems may not be aware of all of the specific use cases that

16   are leveraging [data Meta receives]"  *Id.* at 87.  The result of this is, in a search for particular

17   information, Meta goes "back to square one" with each repository; "having to figure out what is actually

18   stored in each database and often task the engineering team that owns that specific data what it actually

19   is."  *Id.* at 98.  Given obvious variation in potential "use cases" for financial information, health

20   information, and statutorily protected DMV information, even if all parties to all cases engage in the

21   needlessly time-consuming process of *discussing* data for multiple cases together, Meta could produce

22   in response volumes of information that is irrelevant to DMV, and be "back to square one" with DMV

23   data, potentially adding years to the time in which it finally discloses this central information.

24        Other materials from *Facebook Consumer Privacy* do suggest obvious places for Meta to start.

25   At least one repository of "off-Facebook activity," a term Meta uses to include "activity on third-party

26   websites" transmitted by the Pixel[1], is organized by the **website** from which the data is received.  Meta's

27

28   _____

[1] *See e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 17869218, at *5
(N.D. Cal. Dec. 22, 2022), citing Declaration of Meta Engineer Tobias Wooldridge ¶ 11.

outside counsel from Gibson Dunn & Crutcher told Judge Corley in August 2020: "With this off-Facebook activity data, the tables and the database where the data is stored, you know, they've been explained to us like each one of them is a book. And the book is organized by topic. The topic that the book is organized by is the advertiser [*i.e.*, the third-party website]. . . . So for every Facebook advertiser there's a book. Right? There's a table that has some data for advertisement, website activity, that kind of thing. . . . [W]e have to go into each of those books individually." *Facebook Consumer Privacy*, Dkt. 541, Aug. 14, 2020 Hearing Tr. at 10; *see also* Dkt. 537 at 9 (Meta explaining that, other than the limited data accessible to a Facebook user through their account, "[t]here is no centralized way to search for [off-Facebook activity]. To the extent it exists, it is organized by the third parties who provided it.") In other words, the "book" on transmissions from the California DMV website is independent and separate from books about Healthcare or Tax websites and can readily be reviewed for this case.  Coordination is no basis to delay the obvious data pulls that Meta should be discussing with Plaintiff's counsel directly.  Even for a common repository like these "books," the outcome of negotiations on burden and proportionality (and timing) where hundreds or thousands of websites are at issue should not be categorically applied to the DMV case, which concerns transmissions from a single website.

In sum, Plaintiff believes discovery would be most efficient if Meta simply accounts for all three cases when it conducts its initial interviews and searches for responsive information, conferring with each Plaintiffs' counsel about proportionality for the requests in their case.  To reiterate, if Meta identifies a common source of responsive information, Plaintiff is amenable to reasonable compromises to facilitate efficient productions from that source.  Devoting time to disputes about whether a request is "global" in the absence of crucial information about where and how Meta will actually look for responsive information would only create obstacles to the candid, case-specific discussions necessary to ensure efficient, and effective, discovery.  Plaintiff proposes a process in Exhibit A that accounts for these issues and permits the parties to discuss the reasonableness of shared discovery in the context of specific requests and Meta's actual responsive productions.

Meta attempts to characterize Plaintiff's proposals as seeking benefits from coordination without obligation, and suggests that Meta lacks the resources to deal with counsel in three class action

cases concurrently.  Plaintiff's proposal speaks for itself in this regard, and it goes without saying that Meta, one of the largest publicly traded corporations in the United States represented by two large law firms in this relatively narrow case, could manage discovery in three cases without requiring special accommodation from the Court.

C.   **Accommodations regarding depositions should be made with consideration of the particular witness's importance to the case and with the benefit of custodial discovery.**

No one-size-fits-all approach to coordinating depositions can sensibly be imposed at this time. It is not currently clear which case will proceed most quickly to noticing depositions; which custodians will be common to all cases; which witnesses will have the critical information for each case; and which if any witnesses have so much case-specific information for multiple cases that full-day depositions may be necessary for multiple cases.  As discussed in past filings, requiring that depositions be jointly noticed and conducted will create logistical hurdles and undue prejudice far beyond what is required to accommodate the concern that a witness could be asked about the same material on several occasions.  *See* Dkt. 38 at 17-18.  Plaintiff thus believes that a specific order on these issues is premature.  In the alternative, Plaintiff proposes a process that permits joint depositions (if warranted by circumstances at that time for that witness), but does not require them.  Plaintiff's proposal would also allow Meta to produce transcripts from a previously-conducted deposition, provided Meta did not keep the deposition a secret from Plaintiff when it occurred, if Meta believes a later-noticed deposition would be redundant, and then to meet and confer regarding limitations as to time if the transcript, in fact, contains all or part of the information sought in the deposition.

D.   **Counsel should coordinate to limit discovery disputes, where practicable.**

Plaintiff agrees with Meta's position that counsel should attempt to limit the number of disputes brought before this Court, particularly where the issue is the same in multiple cases, which, for the reasons set forth above, may not always be clear to counsel in a particular case.  This, too, should occur without prejudicing any party, including Meta, who may need to raise arguably overlapping disputes in one case with the Court in a timely manner.  Plaintiff would agree (not intending this suggestion to be exclusive of other means of reducing burden on the Court) to notify other counsel when it becomes clear that a discovery dispute will be raised with the Court (Meta should do the same) so that they may

1    have an opportunity to submit a statement regarding the foreseeable impact, if any, in their case.

2    ***Meta's Statement:***

3          In the Joint Statements submitted to this Court on April 13, 2023, Meta proposed a framework

4    for coordinating discovery across *Gershzon*, *In re Meta Pixel Healthcare Litigation*, and *In re Meta*

5    *Pixel Tax Filing Cases* (collectively, the "Pending Cases"). Dkt. 38. At the April 20, 2023 conference,

6    the Court agreed that there are "efficiencies . . . to some coordination on discovery," April 20, 2023

7    Hearing Tr. 9:2–3, and directed the parties, prior to the May 23, 2023 conference, to "reflect on the

8    discovery needs that are common to the three sets of cases," *id.* 8:2–4. The Court conveyed that its

9    "goal"—and the parties' "goal as well"—should be "to avoid inefficiency and undue burden on any

10   party." *Id.* 7:24–8:1.

11         As set forth below, Meta listened to the Court's specific guidance, and proposes a reasonable

12   but limited approach for discovery coordination. Meta believes that its coordination proposal will

13   reduce inefficiencies and undue burden for both the Court and the parties—despite Plaintiff's far-

14   fetched arguments to the contrary. Plaintiff's proposal entirely ignores the Court's guidance. Rather

15   than consider discovery needs common across the three sets of cases, Plaintiff rejects any coordination

16   framework and explains that he will only consider coordinated discovery if there is no actual

17   requirement that he participate in or be bound by reasonable measures for coordination.[2] Plaintiff

18   wants all the benefits of coordinated discovery without any of the obligations. Plaintiff's proposal puts

19   the entire onus for coordination on Meta while demanding that Plaintiff have complete transparency

20   and insight into negotiations with plaintiffs in the other Pending Cases.

21         Meta has and will continue to timely respond to the discovery that has been propounded to date.

22   Meta's purpose in proposing targeted discovery coordination is not to create delay; it is in all of the

23   parties' best interest to take the time to confer on these issues now in order to benefit from the

24   efficiencies that this Court has acknowledged are to be gained from discovery coordination. *See* April

25   20, 2023 Hearing Tr. 9:2–3. Meta acknowledges that for certain issues, Meta may be in the best place

---

[2] Plaintiff's reliance on filings in an unrelated litigation involving different plaintiffs, different causes of action, and different discovery requests is misplaced. Plaintiff does not have full knowledge as to the issues in that unrelated litigation, nor as to what Meta produced in that action and under what circumstances.

2797759.1

to identify overlapping discovery issues in the first instance.  But if Meta is put in the position of coordinating discovery individually—but simultaneously—with plaintiffs in these three different cases, then Meta will need an appropriate amount of time to undertake that additional work.  And it is fair to ask the plaintiffs in the Pending Cases to similarly coordinate for the benefit of everyone involved.

To the extent it is helpful to the Court, Meta first provides a brief overview of the current status of each of the Pending Cases:

In the *Healthcare* case, Meta's motion to dismiss will be fully briefed on July 17, 2023, and the motion is set for hearing on August 16, 2023.  Discovery in that case has started.  To date, the *Healthcare* plaintiffs have served a first set of interrogatories and requests for production ("RFPs"), to which Meta has responded.  The parties are in the process of negotiating the scope of those requests.  On May 1, 2023, the parties filed three discovery dispute letters regarding Meta's responses to plaintiffs' discovery requests.  Those disputes are set for hearing on May 23, 2023.

In *Gershzon*, Meta filed its motion to dismiss on March 31, 2023, and that motion is set for hearing on June 9, 2023.  Discovery in *Gershzon* began on April 20, 2023.  The *Gershzon* plaintiff has also served a first set of interrogatories and RFPs.  Meta's responses and objections are due May 22, 2023.

In the *Tax* case, the plaintiffs filed a consolidated complaint on May 15, 2023.  Meta intends to move to dismiss that complaint.  Although one plaintiff served requests for production prior to the filing of the consolidated complaint, discovery has not yet begun in earnest.

As instructed by this Court, the parties across the Pending Cases have negotiated a Clawback Order, a Protective Order, and an ESI Protocol.  This Court has entered the Clawback Order, and ruled on the parties remaining disputes regarding the Protective Order, and the final disputes relating to the ESI Protocol are pending before the Court.

Meta's proposal for coordinating discovery across the cases, as it relates to depositions, discovery disputes, and requests for production is as follows:

### (1) Coordinated depositions

At the April 20, 2023 conference, the Court directed the parties to "do something about coordinating depositions so that the same person doesn't have to testify on three different occasions

2797759.1

to the same material." April 20, 2023 Hearing Tr. 8:14–16.  Consistent with the Court's guidance, Meta proposes that fact witnesses be deposed only once across the Pending Cases.  Plaintiff here instead proposes burdensome and overbroad logistical hurdles Meta must meet before Plaintiff may—at his option—consider whether to coordinate essentially parallel depositions of a witness with the plaintiffs' group.  For example, Plaintiff asks the Court to require that "Meta produced *the same custodial files* for that witness that it produced in the Noticing counsel's case to Plaintiff in the DMV case at or around (or before) the same time such files were produced to counsel who noticed the deposition." Ex. A[3]  (emphasis added).  Given Plaintiff's repeated protests that productions across matters will differ, this "requirement" makes no sense.

Further, under Plaintiff's proposal, even if Meta has made an *identical* production of a witness's custodial files "at or around (or before) the same time" as it produced the same files to the noticing party, Plaintiff's only obligation is to determine, solely at his discretion, whether the witness "can be deposed at around the same time as the noticed deposition," and if so, to "make reasonable efforts to question that witness on the same day as, or if that is not feasible, within two business days of, counsel who noticed the deposition."  Plaintiff's proposal would allow a witness to be asked the same questions on the same topics over and over, with no coordination at all among plaintiffs in the Pending Cases.  Similarly, Plaintiff proposes that, for depositions in the Pending Cases that Plaintiff does not attend, any effort by Meta to coordinate would give Plaintiff two bites at the apple—Plaintiff can make use of the entire transcript in the prior deposition, and still demand to take deposition testimony from the witness with the only limitation on that further testimony being the length of the questioning, and not the topics that Plaintiff can cover.  This is not a good faith proposal.

Meta proposes that depositions of Meta witnesses proceed as follows:  The plaintiffs' group will together decide on the Meta witnesses (and any third-party witnesses they subpoena) whose testimony is relevant to more than one case, issuing a single notice or subpoena for each witness.  The plaintiffs' group can determine among themselves which counsel will ask global questions that apply to issues relevant to two or more of the Pending Cases; Meta does not object to more than one lawyer

---

[3] Because the Court did not direct the parties to include a Proposed Order as part of this Joint Statement, Meta will instead provide one after the May 23, 2023 conference, to the extent that would be helpful to the Court.

2797759.1

asking global questions, but the plaintiffs should coordinate so that different lawyers are not covering the same topics.  Counsel for Meta would then have an opportunity to ask redirect questions on global issues.  The questions and answers during this portion of each deposition would be treated as if taken in all of the Pending Cases.

After the global portion, counsel representing plaintiffs in each of the individual Pending Cases would have the opportunity to ask the witness case-specific questions (one attorney per case) outside the presence of counsel for the other plaintiffs.  Counsel for Meta would then have an opportunity to ask redirect questions on case-specific issues.  The questions and answers during these sections of each deposition would be treated as if taken in the individual case to which that section applies.

The plaintiffs' group will also coordinate the time allocation between the "global" questioning and the case-specific questioning described above.  Meta anticipates that, while the standard 7-hour period will be appropriate for certain witnesses, in some circumstances where a witness is deposed on both global and case-specific issues, the parties will work together to schedule an adequate amount of on-the-record time in excess of the time limits established by Fed. R. Civ. P. 30(d)(1).  Meta believes it is unnecessary to set specific hour-limits now, as different witnesses will require different amounts of questioning, and Meta expects that the parties can meet and confer on appropriate witness-specific limits.

The parties may also take depositions that are relevant only to a single case, so long as all parties agree that the witness may not later be deposed a second time in any of the Pending Cases.  In this situation, the deposition would proceed in a standard fashion, with the deposition being treated as taken only in that specific case, and with only the relevant parties present.

### (2) Discovery Disputes

Meta is mindful of the Court's guidance that if it is "going to get discovery disputes, [it] would rather not have to deal with the same or similar issues on three different occasions."  April 20, 2023 Hearing Tr. 8:21–23.  Meta believes it would be helpful for the Court to direct the parties to make all reasonable efforts to coordinate on the filing of any discovery dispute briefs.  Given the obvious "overlap . . . in terms of discovery" between the Pending Cases, *id*. 7:22–23, if one plaintiff intends to bring a dispute to the Court, it should be required to confer with the other plaintiffs, so that any

interested plaintiff can participate in filing a joint discovery dispute brief or motion.  This direction will be important to reduce the overall volume of motion practice across the Pending Cases.

### (3) Coordinated written discovery

Prior to the April 20, 2023 conference, Meta proposed a framework for coordinating written discovery across the Pending Cases.  At the April 20, 2023 conference, the Court did not address Meta's specific proposal on written discovery, but directed the parties to consider "whether, for example, some of Meta's document production can be shared across all cases.  So maybe it occurs in the first instance in the healthcare party case because that case is ahead of the others . . . ."  April 20, 2023 Hearing Tr. 8:5–10.  Meta now proposes a framework it believes adheres to this guidance.

Meta is not re-proposing that all written discovery be coordinated across the Pending Cases.  Rather, Meta has significantly narrowed its proposal, including to take into account plaintiffs' vehement opposition to coordinating written discovery.  Meta believes that the greatest efficiency to be gained is by coordinating any further requests for production (rather than going back now to identify which already-served requests are global in nature).

Plaintiff refuses to coordinate with other plaintiffs in serving global requests for production.  Instead, Plaintiff again puts the burden entirely on Meta, and proposes that Meta serve "Coordination Objections" if it believes one of the plaintiffs has served a document request that is duplicative of a request served in another matter.  Ex A.  Meta then must, within only five business days of asserting the objection, provide Plaintiff with an accounting of the "compromises and limitations" and "search protocol and methodology" relating to the production of materials in response to the duplicative request made in the other matter, as well as make a complete production to Plaintiff of the materials produced.  Even if the Coordination objection is "valid," "the DMV case Plaintiff may still pursue non-duplicative discovery responsive to the subject Request insofar as Plaintiff has a good faith basis to believe that non-duplicative discovery is sought," thus depriving the proposed "Coordination Objections" of any real weight or consequence.  *Id.*  Further, by putting the onus on Meta to object to document requests, rather than on the plaintiffs' group to coordinate in advance of serving future requests, Plaintiff's proposal invites disputes between the parties as to whether a request is truly duplicative, and whether Plaintiff has a "good faith basis" to demand discovery on the disputed request even if it is.  It is thus

1    Plaintiff's proposal, not Meta's, that invites the parties to "litigate whether each of [Plaintiff's]

2    additional requests are 'global.'"

3           Meta thus proposes that, to the extent plaintiffs intend to seek any further requests for

4    production on issues relevant to two or more cases, the plaintiffs' group will work together to issue and

5    serve coordinated, written "global" discovery requests.  The plaintiffs' group will issue one copy of

6    written discovery requests to Meta on these "global" issues, rather than issuing duplicative requests

7    covering overlapping topics across the three cases.  Meta may do the same to the extent there are

8    efficiencies to be gained by issuing a single set of requests to all plaintiffs at once.  Meta's responses

9    to any "global" request will be produced to all parties (once discovery is underway in all cases), and

10   any documents will be treated as having been obtained through discovery in each of the Pending Cases

11   and produced to all plaintiffs, with one exception.  To the extent Meta determines a "global" request

12   implicates case-specific documents for one or more cases, documents specific to each case will be

13   produced to the relevant plaintiffs.  Meta believes this compromise proposal addresses Plaintiffs'

14   concern regarding delays arising over what constitutes a "global" request.

15          Plaintiffs in individual cases may also serve further case-specific written discovery requests on

16   Meta, up to certain numerical limits agreed to by the parties or ordered by the Court.  To be clear, Meta

17   is not proposing that the service of case specific requests be sequenced after "global" requests; rather,

18   both "global" and case-specific requests can proceed simultaneously.

19          Meta's responses to case-specific requests, and any documents Meta produces for case-specific

20   requests, will be sent only to the plaintiffs that issued the request and will be treated only as having

21   been obtained in that particular case.

22          *(4) Conclusion*

23          As discussed above, this Court has already identified benefits of coordinated discovery,

24   specifically as to depositions, discovery disputes, and document production, and Meta's proposal

25   focuses narrowly on the efficiencies to be gained through coordinated discovery.  *See also Pieterson v.*

26   *Wells Fargo Bank*, N.A., 2019 WL 1465355, at *2 (N.D. Cal. Feb. 8, 2019) ("[c]oordination is an

27   inherently flexible practice and may be accomplished in many ways," including by "taking care to

28   avoid duplicative discovery").

-18-

Meta recognizes that there are some differences between the Pending Cases, which is why its revised proposal contemplates that the plaintiffs in each case maintain the already-served requests for production that pre-date any coordination and can continue to make case-specific written discovery requests, in addition to any future global requests. *See, e.g.*, Manual for Complex Litigation, Fourth, § 20.14 (directing judges to "encourage techniques that coordinate discovery and avoid duplication" in coordinating several cases); *see id.* §§ 11.423, 11.443, 11.452, and 11.464. The same is true for depositions: Meta's proposal contemplates that the parties will work together to arrange depositions to cover both global *and* case-specific issues, while avoiding unnecessary duplication of effort and burden to witnesses. *See In re Telescopes Antitrust Litig.*, 2021 WL 1541692, at *2 (N.D. Cal. Apr. 20, 2021) (DeMarchi, J.) (requiring parties in separate cases to coordinate on taking depositions of witnesses relevant to both matters, and noting "the Court's authority to manage discovery and to require coordination in the interest of justice"); *Tawnsaura Grp., LLC v. Maximum Human Performance, LLC*, 2012 WL 12331032, at *3 (C.D. Cal. Nov. 7, 2012) (coordinating discovery such that witnesses would be deposed only once and "scheduled for enough time to cover all [] individual issues, with common issues handled in a coordinated and nonduplicative manner," and further requiring the parties to "agree on a number of common discovery requests . . . with a small number of additional requests").

Meta has thus proposed a framework that balances the discovery already underway and the efficiencies that can be gained by coordinated discovery going forward as this Court directed.

## II.    INTERIM DISCOVERY DEADLINES

*Plaintiffs' Statement:*

Appropriate interim discovery deadlines will depend on the case schedule in this action. Plaintiff and Meta have not conferred regarding the case schedule so it would be inappropriate for Plaintiff to suggest one here. The hearing on Meta's motion to dismiss the *Gershzon* Complaint is set for June 9, 2023. Plaintiff anticipates that Judge Illston will enter a case schedule after the hearing. For this Court's reference, Plaintiff is likely to propose a case schedule to Meta and then to Judge Illston that is consistent with the schedule Plaintiff proposed in the parties' Rule 26(f) Report (Dkt. 30), pasted below, provided discovery proceeds in a timely manner. Plaintiff understands that Judge Orrick today approved a case schedule in the Healthcare case that is slightly longer than the below, but it is

-19-

Plaintiff's view that the DMV case schedule should be more aggressive because only two claims for relief are asserted and the factual issues and scope of the DMV action are less complex.

| Event | Proposed Date |
|---|---|
| Plaintiff's motion for class certification and class expert reports | March 22, 2024 |
| Meta's opposition to class certification and class expert reports | April 26, 2024 |
| Plaintiff's reply in support of motion for class certification and rebuttal class expert reports | May 15, 2024 |
| Class certification hearing | May 31, 2024, or as soon thereafter as convenient for the Court |
| Post-class certification case management conference | 30 days after the Court's ruling on class certification |
| Close of fact discovery | September 2024 |

In the interim, Plaintiff respectfully requests that the Court continue to include the DMV Case Plaintiff in proceedings regarding structural discovery orders, including the issues left unresolved by negotiations on a Protective Order and ESI Protocol (in particular, the format of a privilege log). Plaintiff understands that the Healthcare Plaintiffs have proposed a deadline in late June for the parties to resolve or present any disputes on that issue, and Plaintiff is amenable to proceeding on the same schedule.

***Meta's Statement:***

The Court did not ask the parties to discuss or propose a case schedule, and none has been set in this matter. In any event, Meta agrees with Plaintiff's position that it is premature to set interim discovery deadlines. Meta believes that it makes the most sense for the Court and the parties to address interim discovery deadlines once the Court has determined to what extent discovery across *Healthcare*, *Tax*, and *Gershzon* should be coordinated.

2797759.1

Dated:  May 16, 2023

GIBSON, DUNN & CRUTCHER LLP

By: *Lauren R. Goldman*
    Lauren R. Goldman

LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

ANDREW M. KASABIAN (SBN 313210)
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7311
Facsimile:    (213) 229-6311

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Attorneys for Defendant Meta Platforms, Inc.*

-21-

2797759.1

1

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP

2

3

By: *Melissa Gardner* ___
    Melissa Gardner

4

MICHAEL W. SOBOL, SBN 194857
DAVID T. RUDOLPH, SBN 233457
MELISSA GARDNER, SBN 289096
JACOB H. POLIN, SBN 311203
NABILA ABDALLAH, SBN 347764
    msobol@lchb.com
drudolph@lchb.com
mgardner@lchb.com
jpolin@lchb.com
nabdallah@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

5

6

7

8

9

10

11

12

CARNEY BATES & PULLIAM, PLLC

13

By: *Allen Carney* ___
    Allen Carney

14

15

JOSEPH HENRY BATES, III, SBN 167688
ALLEN CARNEY (admitted *pro hac vice*)
COURTNEY E. ROSS (admitted *pro hac vice*)
hbates@cbplaw.com
acarney@cbplaw.com
cross@cbplaw.com
519 W. 7th St.
Little Rock, AR, 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

16

17

18

19

20

*Attorneys for Plaintiff and the Proposed Class*

21

22

23

24

25

26

27

28

JOINT STATEMENT
CASE NO. 3:23-CV-00083-SI-VKD

2797759.1

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Melissa Gardner, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.


Dated: May 16, 2023                    By: _Melissa Gardner_
                                       Melissa Gardner

2797759.1