LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Linnea D. Pittman (admitted *pro hac vice*)
lpittman@lchb.com
Wesley J. Dozier (admitted *pro hac vice*)
wdozier@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

CARNEY BATES & PULLIAM, PLLC
Joseph Henry (Hank) Bates, III (SBN 167688)
hbates@cbplaw.com
Allen Carney (admitted *pro hac vice*)
acarney@cbplaw.com
Courtney Ross Brown (admitted *pro hac vice*)
cbrown@cbplaw.com
Connor Thompson (admitted *pro hac vice*)
cthompson@cbplaw.com
One Allied Dr., Suite 1400
Little Rock, AR, 72202
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIKHAIL GERSHZON and ANACLETO DELEON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No.  3:23-cv-00083-SI-VKD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: June 26, 2026<br>Time: 10:00 a.m.<br>District Judge Susan Illston<br>Courtroom: Courtroom 1 – 17th Floor |

**TABLE OF CONTENTS**

                                                                                                          **Page**

I.     INTRODUCTION ...................................................................................................................1

II.    ARGUMENT ........................................................................................................................2

       A.     Plaintiffs Have Article III Standing .........................................................................2

              1.     Meta's Intrusions are Objectively Offensive ...............................................3

              2.     CIPA and the DPPA Reflect Good Legislative Judgment..............................3

              3.     Meta Mischaracterizes Plaintiffs' Claims and Injury ..................................4

       B.     The Record Supports Certification Under Rule 23(b)(3) .........................................5

              1.     Common Evidence will Prove Class Members' Article III Injury .........................6

              2.     Common Issues Predominate for Class Members' DPPA Claims .........................7

              3.     Common Issues Predominate for Placard Class Members' CIPA Claims ............10

              4.     Meta's Consent Defenses Do Not Defeat Predominance or Typicality ................11

              5.     Statutory and Liquidated Damages Can be Awarded Class-wide .........................12

              6.     Meta Does Not Show Plaintiffs are Inadequate or Atypical................................12

       C.     Any Failure to Show Class-Wide Injury, Typicality, or Identity Is Readily Addressed ...14

       D.     Plaintiffs Appropriately Seek Injunctive Relief.................................................................15

III.   CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Lab. v. Dep't of Lab.*,
   778 F. Supp. 3d 56 (D.D.C. 2025) ...............................................................................................5

*Am. Fed'n of Tchrs. v. Bessent*,
   152 F.4th 162 (4th Cir. 2025) ......................................................................................................5

*Andrews v. Sirius XM Radio Inc.*,
   932 F.3d 1253 (9th Cir. 2019) ..................................................................................................4, 5

*Baysal v. Midvale Indem. Co.*,
   78 F.4th 976 (7th Cir. 2023) ........................................................................................................5

*Bliss v. CoreCivic, Inc.*,
   711 F. Supp. 3d 1233 (D. Nev. 2024) ........................................................................................12

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................................................6, 11

*Cabrera v. Google LLC*,
   2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) .............................................................................9

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ..........................................................................................3, 4, 12

*Carter v. Carter Coal Co.*,
   298 U.S. 238 (1936)......................................................................................................................3

*Cnty. of Los Angeles v. Superior Ct.*,
   242 Cal. App. 4th 475 (2015) .......................................................................................................3

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*,
   2025 WL 3251044 (D.D.C. Nov. 21, 2025) .................................................................................5

*D'Antonio v. Smith & Wesson Inc.*,
   2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ...............................................................................3

*Davis v. Meta Platforms, Inc.*,
   2024 WL 3293644 (D. Nev. July 3, 2024) ...................................................................................8

*Dye v. Meta Platforms, Inc.*,
   2024 WL 2125602 (E.D.N.C. May 10, 2024) .............................................................................8

*DZ Rsrv. v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025).................................5, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Ela v. Destefano*,
  869 F.3d 1198 (11th Cir. 2017) ...............................................................................3, 12

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  655 F. Supp. 3d 899 (N.D. Cal. 2023) ...........................................................................15

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ....................................................................................3, 4

*Frasco v. Flo Health, Inc.*,
  2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) .............................................................12

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025)......................................................................7, 10, 12

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022) ......................................................................................15

*Gonzales v Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........................................................................10

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996 (N.D. Cal. 2010) ..........................................................................13

*Healy v. Milliman, Inc.*,
  164 F.4th 701 (9th Cir. 2026) .......................................................................................6

*Heglund v. Aitkin Cnty.*,
  871 F.3d 572 (8th Cir. 2017) ........................................................................................4

*Hester-Carrillo v. Penn.*,
  2023 WL 6386508 (E.D. Pa. Sept. 29, 2023) ................................................................5

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1 (1994) .................................................................................................2, 3

*Holmes v. Elephant Ins. Co.*,
  156 F.4th 413 (4th Cir. 2025) ..................................................................................5, 15

*Jackson v. LinkedIn Corp.*,
  2025 WL 28643 (N.D. Cal. Jan. 3, 2025)........................................................................8

*Jimenez v. Domino's Pizza, Inc.*,
  238 F.R.D. 241 (C.D. Cal. 2006)..................................................................................14

*Keogh v. Meta Platforms, Inc.*,
  680 F. Supp. 3d 601 (D.S.C. Feb 14, 2024).....................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Knight v. Meta Platforms, Inc.*,
No. 23-13347 (D.N.J. July 29, 2024)..............................................................................8

*Lineberry v. AddShoppers, Inc.*,
2025 WL 1533136 (N.D. Cal. May 29, 2025).................................................................13

*Maracich v. Spears*,
570 U.S. 48 (2013)......................................................................................................4, 11

*Martinez v. D2C, LLC*,
2024 WL 4367406 (S.D. Fla. Oct. 1, 2024)....................................................................9

*McDonough v. Anoka Cnty.*,
799 F.3d 931 (8th Cir. 2015) ..........................................................................................9

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) .......................................................................................12

*Myers v. Aitkin Cnty.*,
2014 WL 7399182 (D. Minn. Dec. 29, 2014).................................................................10

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ...........................................................................................8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......................................................................................9, 11

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .........................................................................................14

*Perkey v. Dep't of Motor Vehicles*,
42 Cal. 3d 185 (1986) ...............................................................................................4, 10

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
328 F.R.D. 255 (D. Alaska 2018), *amended*, 2019 WL 6331355 (D. Alaska Nov. 26,
2019) ..........................................................................................................................13, 14

*Pichler v. UNITE*,
542 F.3d 380 (3d Cir. 2008).......................................................................................6, 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ................................................................................. *passim*

*Rabin v. Google LLC*,
787 F. Supp. 3d 934 (N.D. Cal. 2025) ...........................................................................15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rasmusson v. Chisago Cnty.*,
    991 F. Supp. 2d 1065 (D. Minn. 2014) ................................................................5

*Romero v. Securus Techs., Inc.*,
    331 F.R.D. 391 (S.D. Cal. 2018) ........................................................................15

*Semien v. PubMatic Inc.*,
    2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......................................................3

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) .........................................................................................2

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................2, 3

*United Steel, et al. v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................................8

*Van v. LLR, Inc.*,
    61 F.4th 1053 (9th Cir. 2023) ............................................................................11

*White v. Davis*,
    13 Cal. 3d 757 (1975) .........................................................................................3

*Wilcox v. Swapp*,
    330 F.R.D. 584 (E.D. Wash. 2019) ...................................................................13

**Statutes**

18 U.S.C. 2725(1) ........................................................................................................8

18 U.S.C. § 2721(b)(13) ............................................................................................11

18 U.S.C. § 2724(a) .....................................................................................................6

18 U.S.C. § 2725 ..........................................................................................................7

Cal. Civ. Code § 1798.1(c) ..........................................................................................3

Cal. Civ. Code § 1798.26 .............................................................................................7

Cal. Civ. Code § 2330 ................................................................................................10

Cal. Civ. Code § 3515 ................................................................................................12

Cal. Penal Code § 630 .............................................................................................4, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Cal. Penal Code § 631(a) ............................................................................................................10

Cal. Penal Code § 632.7 .............................................................................................................12

Cal. Penal Code § 637.2 .............................................................................................................10

Cal. Veh. Code § 20 .....................................................................................................................2

Cal. Veh. Code § 1801.2 ......................................................................................................2, 5, 7

Cal. Veh. Code § 1808 ..................................................................................................................3

Cal. Veh. Code § 1808.5 ..............................................................................................................4

Cal. Veh. Code § 1808.7 ..............................................................................................................2

Cal. Veh. Code § 1810 ..................................................................................................................2

Cal. Veh. Code § 1810(b) .............................................................................................................7

Cal. Veh. Code § 12800 ...............................................................................................................2

Cal. Veh. Code § 12816 ............................................................................................................2, 7

Cal. Veh. Code § 13000 ...............................................................................................................2

Cal. Veh. Code § 14600(a) ...........................................................................................................2

Cal. Veh. Code § 22511.55 ..........................................................................................................2

Cal. Veh. Code § 22511.59 ..........................................................................................................2

**Treatises**

Restatement (Second) of Torts § 652B ........................................................................................4

## I. INTRODUCTION

Plaintiffs' opening brief, and the Expert Reports of Dr. Serge Egelman and Arthur Olsen in support, explained how Meta obtained information from the California DMV website concerning an estimated 769,751 Disabled Person Parking Placard holders, and over 17 million MyDMV Account holders during State-mandated transactions over several years. That common evidence, and more, will prove how and why this happened, as well as all elements of both statutory claims alleged.

Unable to rebut evidence that Meta did exactly what Plaintiffs describe in their Complaint, Meta disputes that it caused any harm. It claims *this* question is individualized because DMV record information and disability status may not embarrass every Class member. According to Meta, Plaintiffs must prove the opposite, or forfeit the economies of Rule 23 to enforce a right of action codified for the invasions at issue in this case. Meta argues this is what Article III requires, because the Ninth Circuit would have required such a showing from a woman who browsed www.petsuppliesplus.com.

Plaintiffs' circumstances are different. The State needed individuals' information to facilitate the exercise of public rights. Plaintiffs are individuals who needed to exercise those rights. Their "browsing" at issue consisted of exchanging information through State-issued webpages and legal forms, subject to penalty of perjury and laws prohibiting falsification. In this environment, where Plaintiffs' personal liberties were already constrained by the State, Meta made them data subjects in service of its private enterprise, through no choice whatsoever of their own. The Pixel was a compulsory *part* of the DMV website; the only way to avoid it was the unrealistic choice to avoid the DMV. And even that choice was denied, because neither Plaintiffs nor any Class member knew the Pixel was there.

By the time Class members' DMV records reached Meta's systems, Meta's invasions and statutory violations had occurred, even if they had no Meta account, had received help conducting their transaction, or used someone else's computer. The record on Meta's knowledge, data use, and advertising purposes confirms there is no legitimate excuse for its conduct. Its predominance arguments focus on resolvable questions about post-trial logistics rather than the common questions at the heart of this case. Meta's attacks on the Plaintiffs show no inadequacy or fundamental conflicts. Its other arguments are frivolous.

Plaintiffs have demonstrated that this case satisfies every Rule 23 requirement. Meta has not shown that any factor is unmet. The Court should certify both Classes.

## II.   ARGUMENT

### A.   Plaintiffs Have Article III Standing

Plaintiffs' Article III injury arises from the manner by which Meta obtained their information, and is the same harm that supports a claim for intrusion. Personal liberties are limited in interactions with the DMV. State-issued ID and Placard holders, including Plaintiffs, require those documents, and must disclose true and complete personal information to the DMV to have them. *See* Cal. Veh. Code §§ 1801.2, 1810, 12800, 12816, 14600(a), 22511.55, 22511.59 (required disclosures for MyDMV and Placard Transactions); Dkt. 140-33 (for MyDMV account validation); Cal. Veh. Code § 20 ("unlawful… to knowingly make any false statement"); Cal. Veh. Code §§ 1808.7, 13000 (penalty of perjury). The State's demands for information are consistent with social norms, subject to confidentiality, and inoffensive because they are necessary to the needs of the State and its residents. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 25-26 (1994) ("countervailing interests… may render [] conduct inoffensive").

Meta exploited the State's coercive authority to obtain Plaintiffs' information concurrently with the State. It used the method of acquisition the State itself was using, *i.e.*, the DMV website. It was invisible, undisclosed, and compulsory. Its purpose was to gather information for Meta's data systems, advertising, research, and a host of other pursuits that are unrelated to the governmental exercise of power that brought people to the DMV. The intrusion torts recognize that this type of conduct is "an affront to individual dignity." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (citation omitted). "[A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom… He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant." *Id.* "[O]ne hundred years of legal experience surrounding the term 'privacy,'" confirms that the tort applies with force in State-mandated transactions, because governments—and, as an integrated part the government's website, Meta too—"are capable of coercion far beyond that of the most powerful private actors." *Hill*, 7 Cal. 4th at 27, 38. "[C]oercive government power in basic areas of human life typically poses greater dangers to the freedoms of the citizenry." *Id.*

On this record, "attention to the specific circumstances of the plaintiffs[]" and "due respect" to Congress, confirm that Plaintiffs' injury is real. *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021).

### 1.    Meta's Intrusions are Objectively Offensive

Exploiting the State's coercive power over its residents is intrusive and offensive because the State, not Meta, has authority to extract information from individuals as a condition of exercising public rights. *Hill*, 7 Cal. 4th at 38; *Cf. Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936) ("obnoxious" to entrust one person "with the power to regulate the business of another"); *Ela v. Destefano*, 869 F.3d 1198, 1203 (11th Cir. 2017) (DPPA violator "should not be allowed to take advantage of their position of power to access private information"). Using *invisible* code was even worse. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("surreptitious data collection" highly offensive); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("Plaintiffs' position that this was being done without consent meant that they claimed a violation of [] concrete privacy interests."). The Pixel's being part of Meta's broader profit-driven data collection efforts also supports offensiveness. *See, e.g.*, *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026). That the DMV and Meta implied if not outright stated no tracking would occur, is yet another "plus factor." *See, e.g.*, Dkt. 31-8, A3-194; *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *3 (N.D. Cal. Feb. 17, 2026) (citations omitted).

### 2.    CIPA and the DPPA Reflect Good Legislative Judgment

CIPA and the DPPA clear the path to redress for these intrusions, which reflects an understanding that these harms "'exist' in the real world," shared by voters who amended the State Constitution to name "the improper use of information properly obtained for a specific purpose…or the disclosure of it to some third party" as a "principal 'mischief'" affecting "personal freedom." *White v. Davis*, 13 Cal. 3d 757, 774-75 (1975); *TransUnion*, 594 U.S. at 426. The consensus is that "[t]o exercise their right to privacy, [individuals] must be able to choose when to release personal information, and to whom, and reasonable laws requiring the individual to surrender control should be enacted only when it is deemed absolutely necessary for society's welfare." *Cnty. of Los Angeles v. Superior Ct.*, 242 Cal. App. 4th 475, 483 (2015) (citation omitted). Nor are CIPA and the DPPA the only statutes that recognize the injury. *See* Cal. Veh. Code § 1808 (incorporating DPPA); Cal. Civ. Code § 1798.1(c) (restricting dissemination by state agencies "to protect the privacy of individuals"); Ex. 32 DMV 30(b)(6) Dep. 18:6-13 ("[I]t's [] not really about complying with the DPPA, as we treat those records and the information in them as confidential"); *id.* 63:3-72:4 (discussing confidentiality of information while citizens provide it).

PLAINTIFFS' REPLY ISO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-00083-SI-VKD

Thus, Congress's judgment that a "loss of privacy" results when private actors obtain "personal information collected by States" has deep historical roots and widespread agreement. *See* Dkt. 90 at 6, quoting *Maracich v. Spears*, 570 U.S. 48, 51-52 (2013); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1257 (9th Cir. 2019); *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 577 (8th Cir. 2017). California's judgment that the "'invasion of privacy'… from the use of new technology to 'eavesdrop upon private communications' causes 'a serious threat to the free exercise of personal liberties'" is also entitled to respect. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020), quoting Cal. Penal Code § 630.

### 3.    Meta Mischaracterizes Plaintiffs' Claims and Injury

Contrary to Meta's arguments, "the nature of collection" matters to an intrusion claim, so "[t]he question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself." *Facebook Internet*, 956 F.3d at 603. Despite citing *Popa*, Meta fails to account for Plaintiffs' circumstances. Information was "otherwise private" at the DMV because it was protected by the State Constitution and numerous statutes, as discussed above. *Popa*, 153 F.4th at 791.

Meta acknowledges only the disability information, primarily to claim this Court rejected other allegations. Opp. at 1, 5, 18. In fact, the Court upheld Gershzon's claims based on other personal information, explaining that "Gershzon brings this case as a class action and he alleges, *inter alia*, that '[a]ctive at all times on nearly every page of the DMV website, the Meta Pixel also broadly transmits to Meta other information from the DMV that identifies website users… Because Gershzon has alleged that Meta has improperly obtained his 'personal information'…, he may pursue those claims." Dkt. 90 at 10 n.2.

In addition to being compelled to disclose information to Meta, DeLeon suffered *additional* harm in that Meta obtained information related to his disabled status. *See* Veh. Code § 1808.5; *Perkey v. Dep't of Motor Vehicles*, 42 Cal. 3d 185, 194, 203 n.7 (1986) (Bird, C.J., concurring, "unauthorized dissemination [of fingerprints, as information "relating to the physical or mental condition of any person"] would clearly be an egregious violation of the applicant's right to privacy."). Nothing DeLeon has said or done nullifies this injury. That others may infer DeLeon is disabled because he has a Placard, which he testified does not "bother" him (A5-465), is different from exploiting access through the DMV to watch him start the application, which is an intrusion. *See Andrews*, 932 F.3d at 1261 ("unauthorized, nonconsensual, and involuntary disclosure… from *DMV* records") (emphasis original); Restatement (Second) of Torts § 652B.

Meta contorts what "*Popa* requires" with an order granting DOGE access to federal databases. *Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 172 (4th Cir. 2025); *en banc review pending*, 157 F.4th 575, 576 (4th Cir. 2025). A divided panel's views on a "handful of government employees" (*id.* at 172, describing DOGE) is not the relevant perspective for a private corporation. And other courts have found injury from DOGE's conduct, because "the correct analogy here is whether it would be highly offensive for a federal agency to share lawfully obtained information through unlawfully maintained data systems pursuant to an illegal information-sharing agreement." *Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 2025 WL 3251044, at *13 (D.D.C. Nov. 21, 2025); *see also Am. Fed'n of Lab. v. Dep't of Lab.*, 778 F. Supp. 3d 56, 71-72 (D.D.C. 2025). Meta also raises data breach cases alleging DPPA violations based on "disclosure" of driver's license numbers, to hackers. Opp. at 7. *Baysal* found it "questionable" the DPPA even applied. *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023); *see Andrews*, 932 F.3d at 1260 ("release… by States"). *Baysal's* dissent, crediting that the data came from DMVs, concluded it was "enough that this injury is real." *Id.* at 982 n.1, 983 (Ripple, J.). *Holmes* only discussed intrusion in a footnote, to say it protects different privacy interests than the "disclosure" torts at issue for a data breach, and still held that victims whose license numbers were posted online *had* standing because Congress judged the information "worth protecting." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 427 n.16, 428 (4th Cir. 2025).

Each DMV transaction at issue in this case is a serious, State-mandated disclosure of personal information to accomplish legitimate needs, entitled to protection. Even opting into Paperless Notices, by which a person gives up the legal right to challenge penalties for missing ID and vehicle renewal deadlines when notice of expiration dates is not delivered by mail. Cal. Veh. Code § 1801.2. Meta's authorities are inapposite. *See* Opp. at 8 (analogizing to Tesla and Royal Caribbean cruise websites). Similarly, Plaintiffs need not state a *Federal* Constitutional claim to show their injury is real. *See id.* (citing *Hester-Carrillo v. Penn.*, 2023 WL 6386508, at *11 (E.D. Pa. Sept. 29, 2023)); *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1076 (D. Minn. 2014). Plaintiffs have Article III standing.

**B.     The Record Supports Certification Under Rule 23(b)(3)**

Meta conflates distinct standards to support its predominance arguments. Plaintiffs' burden under Rule 23(b)(3) is to prove by a preponderance of evidence that questions central to their claims predominate. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025).

If Meta moves for summary judgment, Plaintiffs' Rule 56 burden will be to "present evidence tending to show" that material facts are in dispute; circumstantial evidence is sufficient. *Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026) (citations omitted). After trial, the parties—not just Plaintiffs—will have to ascertain who recovers as a Class member, and may rely on "techniques tailored by the parties and the court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).

### 1.     Common Evidence will Prove Class Members' Article III Injury

Class members' standing at summary judgment will not turn on whether: (i) Meta "matched" their Meta account; (ii) the "information" was independently "sensitive"; or (iii) whether information on licenses and Placards was maintained in secrecy, despite Meta's say-so. Opp. at 10-13. Meta's *Popa* argument is addressed in § II-A, and the analysis is the same for all Class members. What Class members did with their licenses when they were not on the DMV website is irrelevant. *See* § II-A-3.

Meta is wrong about matching, too, because no Class member's Article III standing depends on how well Meta's identity matching systems worked. Their DMV information should not be in those systems. That Meta also used it, *trying* to identify them for advertising as it **admits** (*See* Opp. at 3), shows that no countervailing interest justifies Meta's intrusion. The record on Meta's self-serving purposes, as well as the manner of collection, supports predominance. It includes the Pixel's operation throughout the Class period, which was constant; Meta's records reflecting the same, including nearly 17 million transmissions related to MyDMV accounts in a sample; and strong evidence of class-wide injury presented in Plaintiffs' expert reports. Egelman ¶¶ 57-59; Olsen ¶¶ 17, 42, Exhibit I; Dkts. 140-31; 140-32; 140-33 (showing common interface). Meta's tangential questions will not drive the inquiry.

*Pichler*, cited by Meta, confirms that Placard Holders and MyDMV Accountholders suffered the relevant harm, independent of any matching. In *Pichler*, two women brought DPPA claims based on information obtained from their husbands' registration records. Their addresses "matched" their husbands, but in finding no "invasion" of the wives' relevant interests, *Pichler* held that the privacy right belongs to "'the individual' whose personal information from their motor vehicle records is at issue." *Pichler v. UNITE*, 542 F.3d 380, 391 (3d Cir. 2008), quoting 18 U.S.C. § 2724(a). This Court has agreed. Dkt. 90 at 10 n.2 (analyzing *Pichler*). By the time MyDMV Account *holders'* and Placard *holders'* records reached Meta's systems, an invasion had occurred, even if they had no Meta account to match.

The Court should reject Meta's argument that Plaintiffs have a "burden" to provide a Class list at this stage or that such a list affects standing for individuals in objectively defined Classes. Opp. at 12. The evidence will be sufficient to prove standing at summary judgment, discovery is still open, and even after it closes, ascertainability issues are addressed cooperatively in post-trial proceedings. Meta will be doing this in *Frasco* where a jury awarded CIPA § 632 damages to a class of app users. *Frasco v. Flo Health, Inc. See, e.g.*, No. 21-757, Dkt. 791 (N.D. Cal. Oct. 1, 2025) ("Plaintiffs and Meta will meet and confer regarding the data and possible cross-checks and sampling to be conducted by Meta to confirm class membership. The Court's expectation is that the parties will work cooperatively…."). Meta's experts suggestions for querying Meta's data even more precisely will not be necessary. *See* Zervas ¶¶ 99-101.

The DMV knows who Class members are. It keeps the government's system of record for Placards, and MyDMV is its **Identity Management System**. Mot. at 5. Recording the dates of Class members' relevant transactions is necessary to the DMV's core functions, and it testified that it has this information. Cal. Veh. Code §§ 1801.2, 1810(b), 12816; 13002, 22511.55; Cal. Civ. Code § 1798.26; Ex. 33 (DMV 30(b)(6)). Meta expresses concern about overbreadth in *Meta's* records, but it is not possible the DMV will report that an "accidental click" was one of the relevant transactions by a Class member. *See* Opp. at 12.

### 2.    Common Issues Predominate for Class Members' DPPA Claims

Plaintiffs' opening brief explained how common proof will answer six questions central to their DPPA claims, based upon the elements. Mot. at 13-19. Meta disputes that the "motor vehicle record" element, whether Meta "obtained or used" information, and "to whom the information pertains," are common questions, and separately that its consent defense and damages are individualized. Opp. at 17-23. Meta appears to concede that whether it acted knowingly, whether the Pixel transmits "personal information," and whether Meta had a "purpose not permitted" can be answered class-wide. *See id.*

**Motor Vehicle Record.** The DPPA broadly defines this as "any record that pertains to" documents needed by many members of the public, which the DMV issues only on receipt of personal information. 18 U.S.C. § 2725. Plaintiffs set forth their theory that, in light of the record here and statutory purposes, the definition must encompass (1) records the Pixel extracts from Class members' transactions as a result of the DMV making those records available to Meta; (2) Meta's own stored copy of those records; (3) Validated MyDMV Accounts in and of themselves; and (4) the information sourced from the DMV, including the

omnipresent "fbp" first-party cookie. Mot. at 15-16; 18 U.S.C. 2725(1).

Meta's response boils down to asserting that if *all four* of Plaintiffs' theories fail on the merits, then the inquiry would be which DMV records pertain to which documents, as though that itself would vary meaningfully for the limited, standardized, transactions at issue here. Opp. at 18. Given that Plaintiffs cited *United Steel* in their opening brief—which prohibits Meta's approach—Meta argues that Plaintiffs' theories fail as a matter of law. Meta forgets, or ignores, that the Court previously found the same arguments "raise factual questions." Dkt. 90 at 12. It then manufactures flaws in Plaintiffs' arguments by misstating them.

Theory 1 applies to information the DMV obtained in connection with the transactions at issue and made available to Meta, not "everything" the DMV made available to Meta. Opp. at 18. Theory 2 holds that Meta's records "pertain[] to… [the documents] issued by [the DMV]" in the same way as the DMV's own database records do, as records of transaction activity. The parallel between the DMV's and Meta's records is evident in Meta's ability to report when Gershzon conducted Authenticated transactions from *Meta's* records. Opp. at 22, A6-1204–20. Theory 3 applies to Validated accounts which have been confirmed against driver's license information. *Jackson* did not have the evidence before this Court, and did not consider Validated accounts. *Jackson v. LinkedIn Corp.*, 2025 WL 28643, at *4 (N.D. Cal. Jan. 3, 2025). Theory 4 discussed other records sourced directly from the DMV, including cookies set by the DMV, unlike all of Meta's authorities regarding third-party cookies. Egelman ¶ 70; *Knight v. Meta Platforms, Inc.*, No. 23-13347 (D.N.J. July 29, 2024) (distinguishing this case on the facts); *Keogh v. Meta Platforms, Inc.*, 680 F. Supp. 3d 601 (D.S.C. Feb 14, 2024) ("Gershzon involves meaningfully different facts . . ."); *Dye v. Meta Platforms, Inc.*, 2024 WL 2125602, at *4 (E.D.N.C. May 10, 2024) ("Plaintiff makes no similar allegations [to Gershzon] in her Complaint."); *Davis v. Meta Platforms, Inc.*, 2024 WL 3293644, at *6 (D. Nev. July 3, 2024) (same). The fact questions, such as which information in the MyDMV interface came "from" the DMV first, rather than "from" the protected individual as they were compelled to provide it, would have common answers under Theory 4 because they involve a handful of uniform webpages and workflows and technical questions about one entity's data systems.

What questions might predominate under Meta's legal theory is irrelevant. *United Steel, et al. v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010); *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019) (reversing denial of certification where "[b]oth Nissan and the district court mischaracterized

PLAINTIFFS' REPLY ISO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-00083-SI-VKD

Plaintiff's theory…."); *Cabrera v. Google LLC*, 2023 WL 5279463, at *23 (N.D. Cal. Aug. 15, 2023) (rejecting "contingent theories on class certification"). The parties will brief whether the "motor vehicle record" definition creates immunity for misconduct at the "virtual" DMV at the appropriate time. Meta fails to challenge predominance under Plaintiffs' theories, so this is a common question.

**Obtained or Used.** Meta argues that determining if Meta obtained "a class member's" information would be "individualized" because technology exists that can block the Pixel. Dr. Egelman discussed these issues in his Report, explaining why that possibility that such technologies had more than a negligible impact at the DMV is remote. Egelman ¶¶ 128-133; *compare Martinez v. D2C, LLC*, 2024 WL 4367406, at *8 (S.D. Fla. Oct. 1, 2024) (no such evidence).

This cannot be an issue for the Placard Class, which is defined to require transactions in "Meta's records" to avoid even this remote concern. Unlike MyDMV Class members, Placard holders were not required to create accounts, log in to them, validate them, *and* use them for at least one separate transaction. It is plausible that some Placard *Holders* only used one DMV interface online, one time, before August 2023, e.g., to renew their Placard. There is evidence that Meta obtained records of Placard transactions indiscriminately, but if it has no record (in advertising records, or anywhere else) of a person's only Placard transaction, that person would not be in the Placard Class. By contrast, it is implausible that MyDMV Account holders fortuitously avoided the Pixel in all their interactions. Egelman ¶ 133; Egelman Rebuttal ¶ 16. If it unforeseeably turns out some did, that would not defeat predominance. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022). Any question, if any, about *which* Class members' information was obtained is a post-trial matter. § II-B-1.

Meta's filter is a distraction. Meta did not prefer to use PII from *URLs* for matching, preferring to use a "hash" of the information for that purpose. Egelman ¶ 110. Meta thus employed a "filter" on the "developer side," as it emphasizes, which sometimes removed the PII in URLs. Opp. at 21. The Pixel's filter processed the PII, categorized it as such, and removed it only after determining that it was PII in a format not used for matching. URLs themselves were used for other purposes, including inferring "intent," and even other matching methods. *Id.* ¶ 94 (page person visits is used); Ex. 26. Meta's argument that it did not "obtain" PII when the Pixel filter worked sounds credible, but ignores what the DPPA means by "obtain." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 944 (8th Cir. 2015) (access sufficient). Meta misstates the

holding in *Myers v. Aitkin Cnty.*, 2014 WL 7399182, at \*12 (D. Minn. Dec. 29, 2014) (access). Meta should not have had the opportunity to filter the data. The filter is irrelevant to liability. Every Pixel transmission from the webpages at issue is "personal information," not just because many transmissions contained names, emails, and addresses that may have been filtered, but because they also contained electronic identifiers and substantive information, all of which "**can be** fed into a computer and matched with its owner's identity," exactly as Meta **tried** to do. Mot. at 14; *Perkey*, 42 Cal. 3d at 196 (concurrence); *see also* Opp. to Mot. to Exclude Egelman. Why these records "pertain to" Class members is discussed in § II-B-1.

### 3.   Common Issues Predominate for Placard Class Members' CIPA Claims

Plaintiffs explained how common proof will resolve six issues central to the CIPA claims, based upon the elements. Mot. at 20-22. Meta responds regarding five, and additionally disputes whether Non-Class members have claims. Opp. at 15. Consent is addressed in § II-B-4. Meta appears to concede that the extent of its willfulness is common. *See id.*

**(i) California.** CIPA applies when the "communication" is being sent or received in California. Cal. Penal Code § 631(a). It does this to "protect the right of privacy of the people of this state." *Id.* § 630. Meta misrepresents CIPA in saying that the DMV's location is "irrelevant." In *Frasco*, which it cites, Flo was based in London. The plaintiffs proposed to rely on "Flo's location data" to identify users in California, but failed to submit any evidence regarding how. *Frasco* distinguished that situation from another case, where it was enough that a party to the communications (*i.e.*, the DMV here) was "headquartered in California." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025). The DMV, and the vast majority of Class members by virtue of the subject matter, sent or received the relevant communications in California.

**(ii) Party to Communication.** The Placard Class is made up of individuals who have "lost the use of… both hands" or have "documented visual problems," among other disabilities. Compl. ¶ 38; Ex. 27. Meta argues that Placard Class members did not "actually engage[]" in transactions the State recorded as their own when another person assisted them. Opp. at 14. Plaintiffs' theory is the opposite: Under ordinary agency principles, assistance did not strip the principal of their rights, and Class members retained "all the rights" of a party to their own request for accommodations. Mot. at 22; Cal. Civ. Code § 2330; Cal. Penal Code § 637.2 ("Any person who has been injured" may state a claim). *Gonzales v Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018), which Meta cites, concerned a different statute and no

PLAINTIFFS' REPLY ISO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-00083-SI-VKD

communications through an agent. Moreover, if the Court disagrees that Plaintiffs' theory is legally sound, the proper response is to refine the Placard Class accordingly, not to deny certification. *Olean*, 31 F.4th at 669 n.14. DeLeon conducted his own transaction. Mot. at 9; A6-689. "Placard holders" are identifiable and can be contacted. § II-B-1. Once that limited universe is identified, determining which Placard holders personally conducted their transactions can be handled reliably through a standardized, workable process, similar to Meta's survey evidence, but applied to the relevant population. A7-1390 (Amir Report); *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023); *Briseno*, 844 F.3d at 1130–31.

**(iii)** Meta's argument that Non-Class member agents have no CIPA claim is irrelevant. § II-B-1.

**(iv) Contents.** The contents inquiry is manageable because three webpages are at issue for the entire Placard Class. The only question is whether Meta learned, or attempted to, that a Placard Holder is disabled, or used that knowledge. Plaintiffs allege substantive communications in the Placard application/renewal URLs, "microdata," "contextual information," and "Start DP Application" button. Compl. ¶¶ 17, 38-43. Whether Pixel transmissions prove an application was completed is irrelevant. Starting the application conveyed the message. Dkt. 90 at 19. Asking if data from three transactions reflects that message is nothing like asking which data from "a few hundred thousand websites" had unspecified "sensitive" information, as in *Griffith v. TikTok, Inc.*, and similar orders on which Meta relies. *See* Opp. at 16.

### 4.    Meta's Consent Defenses Do Not Defeat Predominance or Typicality

Meta's consent defense to the DPPA raises common questions of statutory interpretation. The DPPA is an "opt-in" regime. *Maracich*, 570 U.S. at 58, 67; 18 U.S.C. § 2721(b)(13). It allows that the DMV "may" disclose information to a "requester" that "demonstrates it has obtained [] written consent." *Id.* Meta's 405-page compilation of policy materials, with no explanation where Meta obtained "written consent," will not demonstrate that this exception applied. Opp. at 21; A1-1-A5-369; A5-545-81. Whether Meta's policies were materially "different" over time as it says now (Opp. at 22-23), or whether "the relevant provisions of each policy stayed materially the same" as it claimed when seeking Judicial Notice of one (Dkt. 63-1 at 2), is of no moment because the defense will fail as a matter of law. Plaintiffs are not required to prove that Meta expressly promised *not* to obtain their personal information from government entities (although that showing is in the record for January – June 2023). Mot. at 4; Opp. at 22. The DPPA required Meta to prove, to the DMV, that Class members agreed Meta *would* do so, in writing, in advance.

CIPA has a lower threshold, but the most Meta could point to—if it had tried—are vague statements like "Our partners use our Products." A4-266. Meta failed to make any clear disclosure about governmental use of the Pixel, and will not show that generalized statements overcame reasonable expectations codified in law for government transactions *and* disability information. And it has not explained why a CIPA "consent" defense should meaningfully differ for individuals with no Meta accounts, when Meta's policies purport to apply to everyone. A3-197. The consent defense presents a common, class-wide issue capable of resolution in one stroke. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) (district court within discretion in determining that issues of consent did not preclude finding of commonality or typicality or adequacy); *Frasco*, 349 F.R.D. at 576 (predominance satisfied for CIPA § 632 with same Meta policies).

The general provisions of Cal. Civ. Code § 3515 do not control over express statutory provisions.

### 5. <u>Statutory and Liquidated Damages Can be Awarded Class-wide</u>

Meta's argument that damages awards must be individualized is the same argument Judge Donato rejected three times in *Frasco*, tried successfully as a class action last year, explaining at length why the "*Campbell* Test" does not apply to CIPA statutory damages. *Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at \*12-14 (N.D. Cal. Sept. 17, 2025); Cal. Penal Code § 632.7; compare *Bliss v. CoreCivic, Inc.*, 711 F. Supp. 3d 1233 (D. Nev. 2024) (analyzing different statute). This Court should reject it on the same grounds.

Meta's assertion that DPPA liquidated damages require "customized review" is frivolous. The Eleventh Circuit clarified the statement from *Kehoe* on which Meta relies, explaining: "[T]he district court's discretion is only limited in the sense that it must award at least $2,500 if any violation has been shown." *Destefano*, 869 F.3d at 1202. *Pichler* holds that the Court may also, for example, grant equitable relief and discretionary "cumulative awards" of the statutory minimum, not that it can ignore the minimum. *Pichler*, 542 F.3d at 394 (3d Cir. 2008); *Destefano*, 869 F.3d at 1201. Meta's "severity of the violation" argument overlooks that the Placard and MyDMV Class members seek separate liquidated damages awards, accounting for Placard Class members' additional injury. Opp. at 24. No Court has ever held that failure to keep an *ID card* private was relevant to this common question. Opp. at 23 (Gershzon shared his ID card).

### 6. <u>Meta Does Not Show Plaintiffs are Inadequate or Atypical</u>

Plaintiffs have demonstrated strong commitment to this action with each Plaintiff (i) confirming he understands his duties and obligations (ii) identifying the requisite class and (iii) articulating the core

components of the allegations (Exs. 36, 37) showing they are informed, actively engaged, and aligned with the same interests as the putative Class Members. Plaintiffs' and Class members' claims are "reasonably co-extensive" because they experienced the same injury, grounded in identical legal theories. *See DZ Rsrv.*, 96 F.4th at 1238, *cert. denied*, 145 S. Ct. 1051 (2025).

What Meta calls a consent hurdle is not unique to the Plaintiffs or any Meta user, is inadequately supported to defeat class certification, and fails as a matter of law in the DPPA, as discussed in § II-B-4.

Meta's exaggerated "honesty and credibility" attacks also fail to show inadequacy or atypicality. Minor inconsistencies in recollection or clarifications during discovery are common in complex litigation and do not demonstrate inadequacy or atypicality. As explained in *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255 (D. Alaska 2018), *amended*, 2019 WL 6331355 (D. Alaska Nov. 26, 2019): "Where courts have considered credibility in assessing the appropriateness of a class representative, they have held that 'credibility issues will defeat typicality only where those credibility problems are directly relevant to the issues in the case, and are 'so sharp as to jeopardize the interests of absent class members'. . . .[This] standard is extremely difficult to satisfy," and is limited to "flagrant cases where putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case." *Id*. at 273; *Wilcox v. Swapp*, 330 F.R.D. 584, 592 (E.D. Wash. 2019) (similar).

Here, while Gershzon initially alleged that he renewed his Placard online, discovery showed he likely renewed by phone, which he later clarified. *See* Mot. at 15. At deposition, Gershzon candidly explained that he had researched renewing online, but he did not recall whether he ultimately renewed online or by phone. Ex. 35. Gershzon's poor recollection does not demonstrate the kind of fundamental dishonesty or antagonism to the Class that would disqualify him as a representative. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Gershzon was only proposed to represent the Class of which he is a member, which can be proven from existing, objective records independent of his recollection, distinguishing *Lineberry v. AddShoppers, Inc.*, 2025 WL 1533136, at *6 (N.D. Cal. May 29, 2025) (non-credible testimony was the only evidence Plaintiffs were class members).

Meta's attacks on DeLeon likewise fall short. Meta characterizes DeLeon's testimony that he relied upon counsel's recommendations in filing suit as disqualifying, but reliance on counsel's expertise is normal

and appropriate for a class representative. *See Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D. Cal. 2006) (explaining that plaintiffs' participation in the case—giving documents to counsel, answering questions, talking to counsel—undermined defendant's argument of "blind reliance"). DeLeon testified that bringing suit "was my lawyer's idea, and I agreed to it" (A5-466), precisely the kind of appropriate cooperation and oversight required of a class representative. Indeed, DeLeon further testified that "[a]fter discovery and discussion, we all believe that I have a strong case to be one of the plaintiff[s]." Ex. 37.

Similarly, Meta's citations to DeLeon's alleged false statements regarding prior litigation involvement reflect minor confusion—not deliberate dishonesty or hostility to class interests. DeLeon explained that when he initially testified that this case was his first involvement with the legal system, he was providing his "best recollection at the moment at the time" and was referring to involvement in cases of this nature, and failure to spontaneously recall decades-old domestic and financial matters during a deposition falls short of showing credibility problems that are "directly relevant to the issues in the case" and "so sharp as to jeopardize the interest of absent class members." *Peterson*, 328 F.R.D. at 273. Additionally, DeLeon's personal political views have no bearing on whether he will adequately pursue Class members' DPPA and CIPA claims. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (only "fundamental" conflicts that "go to the heart of the litigation" defeat adequacy).

**C.    <u>Any Failure to Show Class-Wide Injury, Typicality, or Identity Is Readily Addressed</u>**

Meta presented a theory that a "match" to a Class member's Meta account is required to establish standing and "personal information" in the DPPA and that Plaintiffs are subject to a consent defense that non-Meta users could avoid. If the Court finds that Meta's arguments have merit, those issues can be addressed by refining the Class definition to require that the proposed Class members' transactions have been correctly matched to their Meta account, just as they were for both Plaintiffs. Exs. 21, 24.

Meta's threshold for declaring a "match" was that " ███████████████████ ███████████████████ Ex. 3 to Mot. to Exclude Egelman. An estimated 74% of DMV transactions were matched on a typical day. Olsen ¶ 23. This means Meta believed it matched the individual's own account around ███████████████████ ███████████████████ ███████████████████

███████████████████████████████████████████, and other records reflecting a match, such as the advertising records that reflect Gershzon's 2020 match, among other records. Mot. at 8-9.

For "matched" transactions, confirming Meta obtained information that *did* identify the individual would require only a Class member's identity and the date of their relevant transaction, which the DMV can provide or confirm, the PII in Meta accounts matched on those dates, and a comparison. If warranted, Plaintiffs respectfully request certification of the "matched" Classes to recover damages, in the alternative.

### D.    Plaintiffs Appropriately Seek Injunctive Relief

Plaintiffs have standing for injunctive relief because they could be injured the same way again. The DMV only "paused" the Pixels on its website. Ex. 3; Egelman ¶ 57. California's issuing agency for identity documents remains a tempting target for Meta's ongoing data aggregation business, just as it was when Congress passed the DPPA to prevent this. Egelman § II. Meta's tracking technologies, including other "tools" that users cannot "block" even fortuitously, are still available, and still invisible—even more so now than during the Class period. Egelman ¶¶ 149-152; A1-27 (discussing Conversions API). Nothing about Meta's track record, or Plaintiffs' future interactions with the "virtual" DMV, is speculative. § II-A. *See Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 413 (S.D. Cal. 2018) (certifying class where conduct could recur); Compl. ¶ 28; Ex. 34 (DMV disallowing some tasks in person).

Meta still has Plaintiffs' information—not just on hold, but also in profiles that incorporate inferences from DMV visits, and likely elsewhere in its systems due to its extensive use of Pixel data for vaguely-worded purposes unrelated to DMV business. A6-641-42; *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 918 (N.D. Cal. 2023) (discussing "12 million tables" with potential plaintiff data). These facts distinguish Plaintiffs from *Holmes'* data breach victims who offered "no reason" their data would be stolen again. *Holmes*, 156 F.4th at 433; *see also Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 923 (4th Cir. 2022) ("speculative" defendants would obtain crash reports from hypothetical car accident). Meta's authority only confirms that the Court may grant certification under Rule 23(b)(3) for both monetary and injunctive relief, not that Plaintiffs' request in the alternative, if it does not, is improper. *Rabin v. Google LLC*, 787 F. Supp. 3d 934, 954 (N.D. Cal. 2025) (certifying Rule 23(b)(3) class).

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion.

Dated: April 17, 2026

Respectfully submitted,

*/s/      Melissa Gardner*
Michael W. Sobol (SBN 194857)
msobol@lchb.com
David T. Rudolph (SBN 233457)
drudolph@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street,
29th Floor San Francisco,
CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Linnea D. Pittman (admitted *pro hac vice*)
lpittman@lchb.com
Wesley J. Dozier (admitted *pro hac vice*)
wdozier@lchb.com
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Joseph Henry (Hank) Bates, III (SBN 167688)
hbates@cbplaw.com
Allen Carney (admitted *pro hac vice*)
acarney@cbplaw.com
Courtney Ross Brown (admitted *pro hac vice*)
cbrown@cbplaw.com
Connor Thompson (admitted *pro hac vice*)
cthompson@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Counsel for Plaintiffs and the Proposed Classes*

PLAINTIFFS' REPLY ISO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-00083-SI-VKD